## VANCEBURG & STOUT'S LANE TURNPIKE ROAD CO. et al. v. CHESAPEAKE & O. RY. CO.

(Circuit Court of Appeals, Sixth Circuit.   April 4, 1922.)

No. 3615.

1. **Turnpikes and toll roads ⬤�171⟵10—Right given to collect taxes held "power" and "privilege," within meaning of Kentucky repealing statute.**

The right of Vanceburg & Stout's Lane Turnpike Road Company to collect taxes, given it by Loc. & Priv. Laws Ky. 1889–90, c. 1034, creating it, was a "power" and a "privilege," within the meaning of Ky. St. § 573, providing that all powers or privileges or immunities of a corporation, not obtainable under such chapter, should stand repealed on September 28, 1897.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Power; Privilege.]

2. **Corporations ⬤⟵41—Power of state Legislature to abolish powers and privileges granted by special act depends on Constitution and laws.**

The power of the Legislature to repeal powers, privileges, or immunities of existing corporations granted by special acts depends on the provisions of the Constitution of the state or the general laws of the state, reserving to it the right to revoke any special grants of power given or granted by the Legislature subsequent to the enactment of such general statute.

3. **Turnpikes and toll roads ⬤⟵10—Charter giving right to tax held subject to repeal reserved in Kentucky statute.**

Loc. § Priv. Laws Ky. 1889–90, c. 1034, creating the Vanceburg & Stout's Lane Turnpike Road Company, and giving it the right to levy and collect taxes, was passed in contemplation of Laws Ky. 1855–56, c. 148, providing that all charters and grants to corporations shall be subject to amendment or repeal, and such corporation must be held to have accepted such charter, subject to such power of repeal.

4. **Turnpikes and toll roads ⬤⟵10—Acceptance of provisions of Kentucky Constitution held to effect a surrender of special privilege of levying tax.**

Acceptance by the Vanceburg & Stout's Lane Turnpike Road Company, created by Loc. & Priv. Laws Ky. 1889–90, c. 1034, giving it the privilege of levying the collecting taxes, of the provisions of the Constitution of Kentucky of 1891, did not mean merely that it thereby acquired the power to amend its charter and increase its stock, but it was also a surrender by it of all its special privileges and immunities, including right it had to

⬤⟵For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

levy and collect taxes, and its increase in capital stock did not extend its right to levy and collect taxes beyond the limit authorized by the special act, especially in view of Ky. St. § 573.

Appeal from the District Court of the United States for the Eastern District of Kentucky, at Covington; Walter Evans, Judge.

Bill by the Chesapeake & Ohio Railway Company to enjoin the collection from it by the Vanceburg & Stout's Lane Turnpike Road Company and others of any further tax levied upon its property. Decree for plaintiff, and defendants appeal. Affirmed.

Allan D. Cole, of Maysville, Ky. (H. W. Cole, of Maysville, Ky., on the brief), for appellants.

Le Wright Browning, of Maysville, Ky., for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge.   The Vanceburg & Stout's Lane Turnpike Road Company is a corporation created by special act of Kentucky Legislature April 24, 1890 (Loc. & Priv. Laws 1889–90, c. 1034), with a capital stock of $20,000, for the purpose of constructing a turnpike road 7½ miles in length and parallel with the Ohio river, from Vanceburg to Stout's Lane, both in Lewis county.   To assist in providing funds for the building of this turnpike road, the act incorporating this company created a taxing district comprising all the property lying between the termini of the road, the Ohio river on the north, and a line parallel with that river two miles south thereof, and further provided for the levying and collection of a tax of 50 cents per year upon each $100 worth of taxable property located in the taxing district so created, commencing with the year 1891, and continuing until the road is built and paid for; the funds arising from such tax to be expended solely in the location, building, and construction of the road. The turnpike was also authorized to charge and collect tolls from persons using the road for travel.   The company was also authorized to receive stock subscriptions, and the county of Lewis was authorized to subscribe the sum of $1,000 per mile to assist in the construction of the road, and also to issue bonds for the purpose of constructing a bridge over Quick's Run creek.   It was further provided by this act that stock in this company should be issued to taxpayers, to the extent of taxes paid, and to the county of Lewis, to the extent of its subscriptions, whenever the taxes or subscriptions paid should amount to $25.

On December 29, 1911, the Chesapeake & Ohio Railway Company, having at that time paid $9,761.97 taxes levied under this act, filed its bill of complaint in the District Court of the United States in and for the Eastern District of Kentucky, to enjoin the collection from it by the turnpike company of any further tax levied upon the company's property in that special taxing district for the construction of this turnpike for the year 1908 and subsequent thereto for the reasons: First, that section 573 of the Kentucky statute passed September 28, 1897, terminated the power of taxation by the turnpike company as originally granted to it in the special act incorporating that company. Second, that the articles of incorporation limited the capital stock of

the company to $20,000; that it is required to issue certificates of stock, not only to the subscribers to its capital stock, but also to the taxpayers to the extent of taxes paid, and to the county of Lewis to the extent of the subscription made by it; that it has already received from subscribers to its capital stock, from taxes paid by the taxpayers owning property within the special taxing district, and from subscriptions made by the county of Lewis, in excess of $20,000; that it has no power to issue stock in excess of that amount, and no right or authority to collect taxes for which it has no power to issue stock to the taxpayers. Third, that the turnpike company had actually collected and received from taxes and subscriptions more than enough money to have enabled it, by proper management, to have constructed the turnpike road described and contemplated in its charter.

The District Court granted a preliminary injunction as prayed for in the bill of complaint. Upon appeal this court (Lykins et al. v. Chesapeake & Ohio Ry. Co., 209 Fed. 573, 126 C. C. A. 395), affirmed the decree of the District Court, granting a temporary injunction, for the reason that, if sufficient funds had been collected by the turnpike company to construct the turnpike, the power of taxation was exhausted, and the plaintiff was entitled to an accounting for the purpose of determining that question. The other questions presented in the bill of complaint were not determined by this court in that appeal.

The cause was remanded to the District Court, and was by that court referred to a special master for such accounting. The master found and reported to the court, among other things, that the turnpike company had received from the various sources enumerated in its charter, including the tax levied upon the property in this special taxing district over $20,000; that the reasonable and probable cost for the construction of defendant's turnpike, if constructed in the years between 1891 to 1908, ought not to have exceeded $2,666.23 per mile. To this report the defendant filed exceptions, which were overruled by the court, the report of the master confirmed, and a decree entered perpetually enjoining the collection of any further taxes.

It is wholly unnecessary to review in detail all the questions presented by this record. The capital stock of this corporation was limited to $20,000. It was required by the act of incorporation to issue stock to the extent of all subscriptions and taxes actually received by it. Necessarily this limitation of its capital stock was and is the limitation of the taxes levied by this act for its benefit. It has no right to receive taxes without issuing an equivalent amount of stock to the taxpayer, and it has no authority to issue stock in excess of the capital stock authorized by its charter.

It is contended, however, upon the part of the appellant, that in 1907 it accepted the provision of the present Constitution of Kentucky whereby it then obtained and now possesses the power to amend its charter and increase its capital stock to an amount equal to the additional amount of taxes needed to build and complete this turnpike. If it be conceded that this turnpike company is a corporation entitled to enlarge its powers by filing an acceptance of the provisions of the Constitution adopted since its incorporation, it would perhaps be a suffi-

cient answer to that contention to say that it has not done this, and therefore it has not in this manner extended, or attempted to extend, or increase the amount of the tax levied for its benefit by the special act granting its charter.

Chapter 32 of the Kentucky Statutes, which chapter contains the general incorporation laws of the state of Kentucky, has been passed since the adoption of the present Constitution, and the powers, privileges, and immunities of all corporations created since that time and those corporations created prior thereto, that have accepted the provisions of this Constitution, must be measured by the terms and provisions of the several sections of that chapter. Section 573 of chapter 32 of the Kentucky Statutes, provides in express terms that:

"The provisions of all charters and articles of incorporation, whether granted by special act of the General Assembly or obtained under any general incorporation law, which are inconsistent with the provisions of this chapter concerning similar corporations, to the extent of such conflict, and all powers, privileges or immunities of any such corporation which could not be obtained under the provisions of this chapter, shall stand repealed on September 28, 1897."

[1, 2] The right to receive and expend the tax levied by the act creating this corporation is a power and a privilege, within the meaning of section 573, and is wholly inconsistent with the provisions of chapter 32 "concerning similar corporations." Undoubtedly it was the purpose and intent of the Legislature to repeal by section 573 all such inconsistent powers and privileges that had theretofore been conferred upon private corporations. The power of the Legislature to do this would necessarily depend either upon the provisions of the Constitution of that state or the general laws of that state reserving to it the right to revoke any special grants of power given or granted by the Legislature of the state subsequent to the enactment of such general statute.

[3] On February 14, 1856 (Laws 1855–56, c. 148), the Kentucky General Assembly enacted a general statute providing, among other things:

"That all charters and grants of or to corporations, or amendments thereof, and all other statutes, shall be subject to amendment or repeal at the will of the Legislature, unless a contrary intent be therein plainly expressed."

This special act incorporating this company was passed in contemplation of this general law declaring the public policy of the state in reference to such grants, and the corporation created by this special act must be held to have accepted its charter subject to such reserved power of repeal.

[4] But, if it were conceded that section 573 is wholly inoperative to revoke or repeal this special grant of power, the acceptance by this company in 1907 of the provisions of the Constitution of Kentucky of 1891, did not mean merely that it thereby acquired the power to amend its charter and increase its capital stock. On the contrary, it was also a surrender by it of all its special privileges and immunities. Upon this subject the Kentucky Court of Appeals, in Commonwealth v. Southern Pacific Co., 164 Ky. 818, 176 S. W. 375, said:

"Among the benefits which this chapter affords to old corporations, as a condition for surrender of their special privileges, is the power to amend their

charter and to alter their capital stock, As already stated, the only price the Legislature exacted for these benefits was a formal acceptance of the Constitution, and this, in effect, amounted to a surrender of the old exclusive privileges."

It is therefore wholly unnecessary to consider the question of reasonable cost of the construction of this turnpike, either during the years between 1891 to 1908 or at any other time. This company has exhausted its special power and privilege to receive and expend taxes under its original charter. It cannot, under the present Constitution and Statutes of Kentucky, extend that privilege and power beyond the limits of the original grant. Not only that, but by its acceptance of the present Constitution it surrendered this exclusive privilege of taxation in exchange for the benefits conferred by the new Constitution and the general incorporation laws of the state. It cannot now increase its capital stock under the provisions of the present Constitution and Statutes of Kentucky, and at the same time claim the power of taxation, or rather the power to collect and expend taxes, which is practically equivalent thereto, which it has voluntarily surrendered in exchange for the right to increase its capital stock.

The appellant having voluntarily surrendered the special powers, privileges, and immunities inconsistent with the present Constitution and general incorporation laws of Kentucky, that were conferred upon it by the act creating it, it is wholly unimportant whether section 573 of chapter 32 of the Statutes of that state is effective to revoke or repeal the same.

For the reasons stated, the decree of the District Court is affirmed.