Robert E. SPURLIN, Director of Special Fund, Successor to William O. Windchy, Acting Director, Appellant,

v.

Vernald ADKINS; Leaseway Personal Corporation; Roger D. Riggs, Administrative Law Judge; and Workers' Compensation Board, Appellees,

and

LEASEWAY PERSONAL CORPORATION, Appellant,

v.

Vernald ADKINS; Robert E. Spurlin, Director of Special Fund, Successor to William O. Windchy; Roger D. Riggs, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Nos. 96–SC–517–WC, 96–SC–573–WC.

Supreme Court of Kentucky.

March 27, 1997.

David W. Barr, Labor Cabinet, Special Fund, Louisville, for Spurlin.

Ronald J. Pohl, Ferreri & Fogle, Lexington, for Leaseway Personal Corp.

James E. Isenberg, David M. Benson, Louisville, for Appellee Adkins.

## OPINION OF THE COURT

Claimant was determined to be 80% occupationally disabled due to a work-related back injury which occurred on March 28, 1993. Previously, he had undergone back surgery subsequent to a 1986 injury for which no claim was filed. The Administrative Law Judge (ALJ) determined that claimant had sustained a 20% prior, active disability as a result of the 1986 injury and was totally, occupationally disabled from the combined injuries. As a result, he was awarded 80% of a permanent, total disability for so long as he remained totally disabled. KRS 342.730(1)(a); *Teledyne–Wirz v. Willhite*, Ky. App., 710 S.W.2d 858 (1986).

The employer and the Special Fund appealed, arguing that the 1994 amendments to KRS 342.730(1), which prohibited the consideration of nonwork-related disability when determining the extent of a worker's occupational disability, were remedial legislation which applied to this claim despite the fact that the claim arose before the amendment's effective date. They argued that House Bill 928 declared an emergency in the workers' compensation system and explained that the emergency arose, in part, from the high level of benefits which the decision in *Teledyne* caused to be paid to workers whose overall disability was only partially work-related. However, the argument was rejected by both the Workers' Compensation Board and the Court of Appeals, and the employer appeals. We affirm.

As amended in 1994, KRS 342.730(1) provides, in pertinent part, as follows:

(a) For total disability due to a work-related injury or occupational disease, sixty-six and two-thirds percent (66⅔%) of the employee's average weekly wage but not more than one hundred percent (100%)

of the state average weekly wage and not less than twenty percent (20%) of the state average weekly wage as determined in KRS 342.740 during that disability. Nonwork-related disability shall not be considered in determining whether the employee is totally disabled for purposes of this subsection.

. . . .

(d) For permanent, partial disability, if an employee sustains impairment or disability in excess of fifty percent (50%) as a result of a work-related injury or occupational disease and prior work-related active disability the compensable permanent partial disability period shall then be five hundred twenty (520) weeks from the date the impairment or disability exceeding fifty percent (50%) arises. Nonwork-related impairment or disability and claims under KRS 342.732 shall not be considered in determining whether the employee is impaired or disabled in excess of fifty percent (50%) for purposes of this subsection.

KRS 446.080(3) provides that "[n]o statute shall be construed to be retroactive, unless expressly so declared." Nonetheless, legislation has been applied to causes of action which arose before its effective date, in the absence of an express declaration that the provision is to be so applied, in those instances where the courts have determined that the provision was remedial or procedural in nature and that retroactive application of the provision was consistent with the legislative intent. *See* KRS 446.080(1).

In *Peabody Coal Co. v. Gossett,* Ky., 819 S.W.2d 33, 36 (1991), we explained the concepts of remedial and retrospective legislation as follows:

A retrospective law, in a legal sense, is one which takes away or impairs vested rights acquired under existing laws, or which creates a new obligation and imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past. Therefore, despite the existence of some contrary authority, remedial statutes, or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only

operate in furtherance of the remedy or confirmation of such rights, do not normally come within the legal conception of a retrospective law, or the general rule against the retrospective operation of statutes. In this connection it has been said that a remedial statute must be so construed as to make it effect the evident purpose for which it was enacted, so that if the reason of the statute extends to past transactions, as well as to those in the future, then it will be so applied although the statute does not in terms so direct, unless to do so would impair some vested right or violate some constitutional guaranty. 73 Am.Jur.2d *Statutes* § 354 (1974) (Footnotes omitted).

Before 1987, KRS 342.125 permitted the reopening of a workers' compensation award upon a showing of a "change of condition," a standard which was construed as requiring a change of physical condition as well as a change of occupational disability. *Continental Air Filter v. Blair,* Ky., 681 S.W.2d 427 (1984). In *Gossett,* the worker had returned to work at the time he was awarded benefits due to a work-related eye injury. Subsequently, he was laid off. He alleged that, although he had experienced no physical change since the award, he was unable to find other employment due to the injury. Therefore, he sought to reopen the award. The Court recognized that workers' compensation awards were based on occupational rather than functional disability and determined that the 1987 amendment to KRS 342.125, which permitted the reopening of a claim upon a showing of a "change of occupational disability," was remedial legislation which was consistent with the purpose of the reopening statute. Therefore, the Court determined that the amendment did not come within the legal conception of a retrospective law and could properly be applied to a claim which arose before its effective date.

*Thornsbury v. Aero Energy,* Ky., 908 S.W.2d 109 (1995), concerned the 1994 amendment to KRS 342.732(1)(a). There, the Court observed that the retraining incentive benefit was available to coal workers who had contracted category 1 pneumoconiosis but who did not demonstrate a significant

respiratory impairment and, therefore, had not sustained an occupational disability. The purpose of the benefit was to enable such workers to retrain, with the goal of encouraging them to obtain employment outside the mining industry before they became occupationally disabled. The Court observed that the remedy contained in the pre–1994 version of KRS 342.732(1)(a) was ineffective in accomplishing that purpose. *Id.* at 112. Since the apparent reason for amending KRS 342.732(1)(a) was to substitute a remedy which was more likely to accomplish the purpose for which the provision was created, the 1994 amendment was determined to be remedial in nature. Therefore, it could properly be applied to claims which arose before its effective date.

Amendments have also been found to be remedial where they corrected apparent oversights in the prior law. For example, in *Newberg v. Davis*, Ky., 867 S.W.2d 193 (1993), which concerned the continuation of an award after the worker's death, the Court determined that when KRS 342.732 was enacted there was no rational basis for the legislature to have intended different treatment for the survivors of recipients of awards made pursuant to KRS 342.732 as opposed to KRS 342.730. KRS 342.730(3), which predated the enactment of KRS 342.732, provided for the continuation of awards of income benefits made pursuant to "this section." The 1990 amendment to KRS 342.730(3) substituted the word "chapter" for the word "section." Therefore, the amendment was considered to be remedial in nature and applicable to claims which were pending on its effective date. Subsequently, in *Bowling v. Special Fund*, Ky., 878 S.W.2d 22 (1994), the Court held that the remedial purpose of the amendment supported applying it to all claims which arose on or after its effective date.

By contrast, in instances where the amendment at issue has affected the level of income benefits payable for a worker's occupational disability, the Court has consistently determined that the amendment was substantive in nature and that the law on the date of injury or last injurious exposure controls. An amendment which becomes effective after that date is considered to be substantive in nature and may not be applied to claims which arose before the amendment's effective date. For example, workers whose claims arose before the effective date of benefit increases have not been permitted to receive the increased benefit since to do so would increase the liability of the employer and the Special Fund. *Beth–Elkhorn v. Thomas*, Ky., 404 S.W.2d 16 (1966); *Maggard v. International Harvester*, Ky., 508 S.W.2d 777 (1974). Likewise, in *Federal Materials Co. v. Baker*, Ky., 885 S.W.2d 704 (1994), the Court determined that an amendment which reduced a widow's benefit from 100% to 50% of that which her husband had received, was not remedial in nature. Therefore, it did not operate to reduce the amount payable as a result of an injury which occurred before the amendment's effective date.

Similarly, in cases concerning the award of attorney fees, the amount of which is a function of the amount of benefits which the worker is awarded, the general rule is that the law in effect on the date of injury or last injurious exposure controls. In *Hamilton v. Desparado Fuels, Inc.*, Ky., 868 S.W.2d 95 (1993), the Court determined that just as the injured worker's benefit was fixed by the law in effect on the date of injury, the maximum attorney fee for representation on a workers' compensation claim was fixed by the law in effect on the date of injury. A post-injury amendment which removed the cap on attorney's fees was not shown to be remedial in nature and, therefore, did not apply to the claim. By contrast, in *Napier v. Scotia Coal Co.*, Ky., 874 S.W.2d 377 (1994), the amendment at issue authorized an attorney fee for successfully representing a worker in reopening a claim and, thereby, encouraged attorneys to undertake such representation. Accordingly, the Court determined that the amendment furthered the purpose of the reopening statute and was remedial. However, the Court determined that a later amendment, which removed a limitation on the amount of the attorney's fee in a reopening, was not. *Id.*

In the instant case, the decisions of the Board and the Court of Appeals relied on the principle that the law in effect on the date of

injury fixes the rights of the injured worker and the obligations of the defendants regarding income benefits for that injury. As of the date upon which claimant was injured, KRS 342.730(1), as construed in *Teledyne*, authorized an award under the provisions of KRS 342.730(1)(a). Whereas, the 1994 amendments to KRS 342.730(1) would prohibit the consideration of prior, active non-work-related disability when determining the extent of a worker's occupational disability for the purpose of awarding income benefits. Therefore, if the 1994 amendments were applied, claimant would be entitled to an award at the lesser rate and duration authorized by KRS 342.730(1)(b) or (1)(c).

The employer and the Special Fund argue that in view of the emergency declaration and the "crisis" in the workers' compensation program, the 1994 amendments are remedial in nature. They also argue that claimant has no vested right to the benefit of *Teledyne, supra*, a decision of a court, citing *Ward v. Harding*, Ky., 860 S.W.2d 280 (1993). Additionally, they argue that the creation of KRS 342.730(1)(d), which provides an increased benefit for workers whose disability is greater than 50% and is, in part, due to prior, active work-related disability, constituted a legislative trade-off for eliminating the consideration of nonwork-related disability.

The significance of an emergency clause is that legislation containing such a clause becomes effective upon approval of the Governor rather than ninety days after adjournment of the session in which it is passed. Ky. Const. § 55. Emergency legislation may or may not be remedial in nature. In the absence of an express statement that a particular piece of legislation is remedial and is to apply to antecedent causes of action, the presence of an emergency clause does not necessarily indicate a legislative intent that it be so applied. Neither the emergency clause nor any other provision of House Bill 928 provides that the 1994 amendments to KRS 342.730(1) shall be construed as retroactive. Therefore, the question becomes whether it appears that the legislature intended for the amendment to be applied retroactively. We are not persuaded that it did.

Unlike the purpose of the retraining incentive benefit which was addressed in *Thornsbury*, the purpose of the income benefit is to compensate injured workers for the impairment of their ability to earn an income and to enable them to continue to provide the necessities of life for themselves and their dependents. *See Newberg v. Weaver*, Ky., 866 S.W.2d 435, 436 (1993). There is no indication that KRS 342.730(1), as construed in *Teledyne*, was ineffective in accomplishing that purpose. *Teledyne* was decided in 1986. Despite ongoing funding problems and extensive amendments to the Act since that time, including those resulting from the 1987 extraordinary session, *Teledyne* remained the law until the 1994 amendments were enacted, a fact which implies legislative assent until that time. Reliance on *Ward v. Harding* for the principle that workers who were injured before the effective date of the 1994 amendments had no vested right to the benefit of the decision in *Teledyne* is misplaced. *Ward v. Harding* concerned a change in the Court's interpretation of certain contract terms. It did not concern whether amendments which modified a statutory remedy in a manner which abrogated a prior decision of the Court were intended to be retroactive or prospective in their application.

Although the amendment to KRS 342.730(1)(a) may relieve financial pressure on the Special Fund and employers in certain instances by eliminating the consideration of nonwork-related occupational disability, it does so by decreasing the level of income benefits payable to totally disabled workers whose occupational disability is partially nonwork-related. Contrary to the argument advanced by the Special Fund, KRS 342.730(1)(d) does not constitute a trade-off for those workers. Just as for subsections (1)(b) and (1)(c), the maximum rate and duration of income benefits payable under subsection (1)(d), are lower than those payable under subsection (1)(a). Furthermore, the remedy created by subsection (1)(d) is available only to workers whose prior, active disability is work-related. Finally, when compared with the prior version of KRS 342.730(1), subsection (1)(d) increases the liability of defendants in instances where the partial occupational disability resulting from

a worker's injury and prior, work-related disability exceeds 50% from 425 weeks to 520 weeks.

As some indication of the legislature's intent concerning the retroactive application of the amended version of KRS 342.730(1), we observe that, contemporaneously, the legislature amended the reopening statute. Effective April 4, 1994, KRS 342.125(3) provides:

(3) In a reopening or review proceeding where there has been additional permanent partial disability awarded, the increase shall not extend the original period, unless the combined prior disability and increased disability exceeds fifty percent (50%), but less than one hundred percent (100%), in which event the awarded period shall not exceed five hundred twenty (520) weeks, from commencement date of the original disability previously awarded. The law in effect on the date of the original injury controls the rights of the parties.

Clearly, the legislature intended the law on the date of injury to determine whether the amended version of KRS 342.730(1) controls the duration of a reopened award. We view this as an indication that the legislature intended the law on the date of injury to determine whether the amended version of KRS 342.730(1) controls the original award of benefits as well.

In view of the foregoing, we conclude that the changes in the rights and obligations of the parties embodied in the 1994 amendments to KRS 342.730(1) constituted substantive rather than remedial or procedural changes. *Beth–Elkhorn v. Thomas; Maggard v. International Harvester.* Therefore, we are not persuaded that the amendments should be applied to causes of action which arose before their effective date.

The decision of the Court of Appeals is hereby affirmed.

All concur.