**Mary Jo EDWARDS, Appellant,**

v.

**LOUISVILLE LADDER, Honorable Robert E. Spurlin, Director of the Special Fund; Honorable Ronald W. May, Administrative Law Judge; And Kentucky Workers' Compensation Board, Appellees.**

**No. 96–CA–2597–WC.**

Court of Appeals of Kentucky.

Oct. 10, 1997.

Ched Jennings, Louisville, for Appellant.

Ellen Hesen, Louisville, for Louisville Ladder.

Joel Zakem, Labor Cabinet, Louisville, for Special Fund.

Before BUCKINGHAM, HUDDLESTON and KNOPF, JJ.

## OPINION

BUCKINGHAM, Judge.

This case involves an appeal by Mary Jo Edwards (Edwards) from a decision of the Workers' Compensation Board (Board) affirming an opinion and award by an Administrative Law Judge (ALJ). The issues involve the apportionment findings of the ALJ, the extent to which Edwards is entitled to benefits, and the constitutionality of the 1994 amendments to Kentucky Revised Statute (KRS) 342.730.[1]  For the reasons set forth hereinafter, we affirm the decision of the

---

1. As Edwards' claim was filed prior to the 1996 amendments to the Workers' Compensation Act, this case involves the statutes as they existed at that time and not as they now exist.

Board and hold the statutes to be constitutional.

Edwards, a 66–year–old woman, worked for Louisville Ladder Company (Louisville Ladder) for approximately 30 years as an assembler and machine operator, which required her to do a great deal of lifting and stooping. In February 1993, Edwards fell and suffered a hip injury (which was not work-related) necessitating surgery. She did not return to work until six months later, at which time she was placed on a "light duty" job. In September 1994, Edwards experienced pain in her lower back when she stooped to pick up some parts at work. As a result of this injury, Edwards filed a workers' compensation claim against Louisville Ladder.

The ALJ ruled that Edwards was 100 percent disabled, but that 40 percent of her disability was the result of the prior, noncompensable hip injury. The ALJ further ruled that an additional 40 percent of Edwards' disability was due to "non-work spontaneous fractures," meaning that only 20 percent of her disability was the result of the accident she sustained while working for Louisville Ladder. Pursuant to the parties' stipulation, the ALJ apportioned one-half of the 20 percent disability to Louisville Ladder and one-half to the Special Fund, and further ordered that Edwards' benefits be paid for 425 weeks. KRS 342.730(1)(c). Pursuant to KRS 342.730(4), the ALJ also directed that Edwards' benefits be reduced by 10 percent beginning at age 65 and by 10 percent each year thereafter until and including age 70. The Board affirmed the ALJ, whereupon Edwards filed this appeal.

The first argument raised by Edwards is that the findings of the ALJ that she suffered from a preexisting active hip condition and nonwork-related compression fractures are erroneous and an abuse of discretion. She states in her brief that "there was absolutely *no* medical or lay testimony for ALJ to make such *active* findings much less support ALJ May's apportionment of 80% of the Petitioner's total disability for the non-work related hip and spontaneous compression fractures." We have reviewed the evidence and determined that Edwards' argument has no merit.

The medical evidence consisted of reports of Drs. William Ramsey, Wayne Kotcamp, and Robert Jacob. Dr. Ramsey, who apparently treated Edwards' prior hip fracture, states in his notes that Edwards was complaining of back pain in August of 1994, over a month before she sustained the back injury in question. This directly contradicts Edwards' argument that she had no previous injuries to her lower back. Further, when Dr. Ramsey saw Edwards approximately one week after her back injury, she failed to mention the injury to him. Dr. Ramsey detected evidence of "an old compression fracture L3" and "some narrowing of the disk space at L2–3 and also at L5–S1." TR Vol. I, p. 71. He also found that Edwards was suffering from "pronounced osteoporosis." *Id.*

Dr. Jacob examined Edwards in March 1995 and found that she had compression fractures at L2, L3, L4, and L5, which he stated were "a direct result of the patient's severe long-standing osteoporosis and the single most common manifestation of advanced lumbar disease." Dr. Jacob determined that only the fracture at L2 may have occurred at Edwards' work, and he assigned her a five percent whole person impairment due to that fracture. In addition, he stated that "at least 90 percent [of the impairment] would have been due to the patient's osteoporosis for were it not for the osteoporosis, it [the fracture] would have never occurred."

In his examination of Edwards, Dr. Kotcamp found that she suffered from deformities at L3 and L5 and also a compression fracture at L2. He asserted that the problems at L3 and L5 predated Edwards' alleged work-related injury. According to Dr. Kotcamp, Edwards suffered from osteopenia, which was brought into disabling reality by Edwards' work injury. He assigned a permanent partial impairment of 30 percent to the body as a whole as a result of Edwards' compression injuries.

The question before the Board on appeal was "whether such evidence as there was before the ALJ should be viewed as uncontradicted and compelling a different re-

sult." *Western Baptist Hospital v. Kelly,* Ky., 827 S.W.2d 685, 687 (1992). The Board determined that the ALJ's findings were supported by substantial evidence. Upon an appeal to this Court, our function is "to correct the Board only where the the [sic] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Kelly, supra,* at 687–88.

■ Edwards had previously injured her hip in a nonwork-related accident and frequently used a cane to walk following the injury. Furthermore, Dr. Ramsey and Dr. Kotcamp indicated that Edwards had suffered preexisting fractures to her vertebrae before the back injury in question occurred. The evidence was sufficient to support the findings of the ALJ, and no flagrant error or gross injustice exists in this case. *Kelly, supra.*

Edwards' next argument is that since the ALJ determined that she was 100 percent occupationally disabled, she is entitled to receive benefits for the duration of her injuries pursuant to KRS 342.730(1)(a) rather than benefits for 425 weeks pursuant to KRS 342.730(1)(c). KRS 342.730 provided in relevant part that:

(1) Except as provided in KRS 342.732, income benefits for disability shall be paid to the employee as follows:

(a) For total disability due to a work-related injury or occupational disease, sixty-six and two-thirds percent (66–2/3%) of the employee's average weekly wage but not more than one hundred percent (100%) of the state average weekly wage ... during that disability. Nonwork-related disability shall not be considered in determining whether the employee is totally disabled for purposes of this subsection.

. . . .

(c) For permanent, partial disability, ... sixty-six and two-thirds percent (66–2/3%) of the employee's average weekly wage but not more than seventy-five percent (75%) of the state average weekly wage ... for a maximum period from the date the disability arises, of four

hundred twenty-five (425) weeks.... The period of disability under this paragraph for nonwork-related disabilities shall not extend the maximum period of disability under this paragraph.

The statutory language in question is the pronouncement in KRS 342.730(1)(a) that "[n]onwork-related disability shall not be considered in determining whether the employee is totally disabled for purposes of this subsection" and the statement in KRS 342.730(1)(c) that "[t]he period of disability under this paragraph for nonwork-related disabilities shall not extend the maximum period of disability under this paragraph." Both the Board and Edwards agree that the aforementioned statutory language is intended to legislatively overrule *Teledyne–Wirz v. Willhite,* Ky.App., 710 S.W.2d 858 (1986). That case held that "even though a claimant had a noncompensable occupational disability which existed prior to the [compensable] injury, this prior disability is *not excluded* when determining whether there was 'total disability' for the purposes of KRS 342.730(1)(a) ...." Benefits were ordered to be paid to the claimant in the *Teledyne–Wirz* case under KRS 342.730(1)(a) for so long as she was disabled. *Id.* at 860.

The Kentucky Supreme Court recently addressed the revised version of KRS 342.730(1)(a) in *Spurlin v. Adkins,* Ky., 940 S.W.2d 900 (1997). In *Adkins,* the claimant was determined to be totally occupationally disabled from a compensable injury (resulting in 80 percent disability) and a noncompensable injury (resulting in 20 percent disability) and was awarded benefits under the prior version of KRS 342.730(1)(a) for the duration of his disability. *Id.* In the course of declaring that the 1994 amendments will not be applied retroactively, the Court in *Adkins* stated that "the 1994 amendments to KRS 342.730(1) would prohibit the consideration of prior, active nonwork-related disability when determining the extent of a worker's occupational disability for the purpose of awarding income benefits." *Id.* at 903. This statement by the Court indicates that the statute as amended is to be interpreted in accordance with its plain meaning—any noncompensable disability is not to be consid-

ered in determining whether a person is totally disabled and entitled to increased benefits under KRS 342.730(1)(a). This approach is in accordance with the accepted rule that "[i]n the absence of a specific statutory definition, statutory terms are to be 'construed according to the common and approved usage of language.' KRS 446.080(4)." *Claude N. Fannin Wholesale Co. v. Thacker,* Ky.App., 661 S.W.2d 477, 480 (1983).

According to the ALJ and the Board, Edwards would not be totally occupationally disabled in the absence of her nonwork-related disabilities. Therefore, she does not meet the criteria for total disability payments under KRS 342.730(1)(a). Further, KRS 342.730(1)(c) states clearly that nonwork-related disabilities "shall not extend the maximum period of disability under this paragraph." Therefore, Edwards' argument that she is entitled to receive benefits for the duration of her injury is without merit.[2]

Edwards next contends that the language in KRS 342.730(1)(a) that "[n]onwork-related disability shall not be considered in determining whether the employee is totally disabled for purposes of this subsection" deprives her rights to a remedy and to compensation for her injuries which are guaranteed through Sections 14 and 54 of the Kentucky Constitution. Section 14 of the Kentucky Constitution states that "[a]ll courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Section 54 of the Kentucky Constitution states that "[t]he General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property."

Analogizing her claim to a tort claim, Edwards attempts to demonstrate that she has been denied full compensation for her injuries due solely to her preexisting condition. In other words, she argues that but for the 1994 amendment to KRS 342.370(1)(a), she would be entitled to benefits for the duration

of her injuries rather than compensation for only 425 weeks.

Edwards' tort theories are inapplicable in a workers' compensation case, as it has long since been held that the advent of Kentucky's workers' compensation system "practically abolished the common law relating to the subject of tortious liability as between the employer and the employee. . . ." *Morrison v. Carbide and Carbon Chemicals Corp.,* 278 Ky. 746, 750, 129 S.W.2d 547 (1939). The Court in *Morrison* essentially stated that the workers' compensation system is the exclusive remedy for any injuries falling within its purview, except for intentional injuries caused by the employer. *Id.* at 750–51, 129 S.W.2d 547. *See also* KRS 342.690(1); *Davis v. Solomon,* Ky., 276 S.W.2d 674, 676 (1955); *Zurich American Ins. Co. v. Haile,* Ky., 882 S.W.2d 681, 684 (1994); *Zurich Ins. Co. v. Mitchell,* Ky., 712 S.W.2d 340, 342 (1986). Edwards makes no contention that she opted out of the Workers' Compensation Act's coverage. She has therefore waived any tort claim she may have had against Louisville Ladder, rendering moot her tort arguments and leaving only the question of whether KRS 342.730(1)(a) is constitutional.

KRS 342.730(1)(a) is constitutional and does not violate either Section 14 or Section 54 of the Kentucky Constitution. In fact, it is perfectly logical for the General Assembly to determine that only persons totally disabled from compensable injuries should receive benefits for the duration of those injuries. The very definition of "injury" for workers' compensation purposes speaks of "any *work-related* harmful change in the human organism, arising out of and in the course of employment. . . ." (Emphasis added.) KRS 342.0011(1).

A similar argument was made that the workers' compensation system was in violation of Section 54 of the Kentucky Constitution in *Greene v. Caldwell,* 170 Ky. 571, 580, 186 S.W. 648, 652 (1916). In holding the workers' compensation system to be constitutional, the *Greene* court stated:

---

**2.** Edwards places considerable emphasis on the case of *Young v. Fulkerson,* Ky., 463 S.W.2d 118 (1971), although she fails to identify how the case helps her argument. We fail to see its relevance.

It is quite correct to say that this section [54] operates as a restraint on the General Assembly and prohibits it from attempting to limit the amount of recovery in the cases described in the section. But in this legislation the General Assembly did not arbitrarily or at all undertake to limit the amount of recovery. It merely proposed a statute to a certain class of people for their individual acceptance or rejection. It did not assume to deprive these classes or individuals without their consent of any constitutional rights to which they were entitled. The General Assembly merely afforded by this legislation a means by and through which individuals composing classes might legally consent to limit the amount to which the individual would be entitled if injured or killed in the course of his employment.

*Greene,* at 580–81, 186 S.W. 648. Similarly, it has been more recently held that

[o]ur Kentucky Constitution, §§ 14, 54, and 241, preserve to all persons, including the employee, the common law remedy in tort against a party at fault, except where the employee has made a voluntary election to waive such constitutional rights, express or implied. The foundation for declaring workers' compensation constitutional in Kentucky is built on recognition of this principle. *Wells v. Jefferson Co.,* Ky., 255 S.W.2d 462 (1953). In *Wells,* we recognized a "presumed acceptance" as a waiver of the worker's constitutional rights, but we did not abolish the acceptance and waiver requirements.

*M.J. Daly Co. v. Varney,* Ky., 695 S.W.2d 400, 403 (1985), *overruled on other grounds by U.S. Fidelity & Guaranty Co. v. Technical Minerals, Inc.,* Ky., 934 S.W.2d 266, 269 (1996). Therefore, by electing to proceed under the workers' compensation system, Edwards has waived any rights that she could have asserted under §§ 14 and 54 of the Kentucky Constitution.

KRS 342.730(1)(a) now prevents extended benefit payments for injuries which would not rise to the level of total disability, thereby insuring that only work-related injuries which result in total disability are compensated for the increased duration and monetary amount set forth in the statute. Edwards will be fully compensated for her work-related injuries, but she will not receive excess compensation for her nonwork-related injuries. The General Assembly's approach to these situations in the 1994 amendments complies with both logic and the law.

Edwards' final argument is that "the 'tier-down' provisions of KRS 342.730(4) as enacted in 1994[are] unconstitutional and violate her rights." Although she did not cite any authority to support her position, Edwards claims that the statute violates the due process and equal protection provisions of the Kentucky Constitution and constitutes discrimination based on age. KRS 342.730(4) provided in its entirety as follows:

If the injury or last exposure occurs prior to the employee's sixty-fifth birthday, any income benefits awarded under KRS 342.750, 342.316, 342,742, or this section shall be reduced by ten percent (10%) beginning at age sixty-five (65) and, by ten percent (10%) each year thereafter until and including age seventy (70). Income benefits shall not be reduced beyond the employee's seventieth birthday.

■ A court dealing with a challenge to the constitutionality of an act of the General Assembly must "necessarily begin with the strong presumption in favor of constitutionality and should so hold if possible." *Brooks v. Island Creek Coal Co.,* Ky.App., 678 S.W.2d 791, 792 (1984). It has further been held that the constitutionality of a statute dealing with economic matters "will be upheld if its classification is not arbitrary, or if it is founded upon any substantial distinction suggesting the necessity or the propriety of such legislation." *Kentucky Harlan Coal Co. v. Holmes,* Ky., 872 S.W.2d 446, 455 (1994). In addition, "[a] statutory classification in the area of social welfare is not unconstitutionally arbitrary if it has a legitimate objective and is rationally related to that objective." *Estridge v. Stovall,* Ky.App., 704 S.W.2d 653, 655 (1985). *Estridge* also states that due process or equal protection are violated " 'only if the resultant classifications or deprivations of liberty rest on grounds wholly irrelevant to a reasonable state objective.' " *Id.,* citing *Kentucky Assoc. of Chiropractors,*

*Inc. v. Jefferson County Medical Society,* Ky., 549 S.W.2d 817 (1977). What these standards mean is that appellate review of this issue will involve the use of the rational basis test.[3]

■ Although the issue of whether KRS 342.730(4) amounts to age discrimination in violation of the due process and equal protection clauses of the Kentucky Constitution is one of first impression in Kentucky, a similar issue was raised in *Brooks, supra.* In *Brooks,* the argument concerned the constitutionality of a provision in KRS 342.730(1)(b) (since repealed) which discontinued workers' compensation benefits "after the employee becomes eligible for normal old age benefits under the Federal Old Age, Survivors and Disability Insurance Act...." *Id.* at 792. The Court in *Brooks* determined the provision in question to be a constitutionally valid attempt to prevent the duplication of wage losses. *Id.* at 792–93. If a provision which completely cuts off workers' compensation benefits can be deemed constitutional, this statute, which merely reduces benefits, is also likely constitutional.[4]

A statute very similar to KRS 342.730(4) was declared constitutional in *Cruz v. Chevrolet Grey Iron, Div. of Gen. Motors Corp.,* 53 Mich.App. 472, 220 N.W.2d 178 (1974), *aff'd* 398 Mich. 117, 247 N.W.2d 764 (1976). The statute in the *Cruz* case provided that an employee entitled to or receiving compensation benefits who had reached the age of 65 would have his benefits reduced 5 percent per year from ages 65–75.

Rejecting a worker's argument that the statute was unconstitutional, the Court of Appeals of Michigan determined that "[t]he use of age in the statute to classify is reasonable" and that when workers' compensation benefits were viewed as compensation for wage loss "it is not unreasonable to assume that the Legislature found that, upon attaining the age of 65, a worker's level of compensation often decreased as a result of retirement, reduction in work, or other reasons." *Cruz,* 220 N.W.2d at 180. In affirming the Court of Appeals, the Michigan Supreme Court stated that "[w]e would sustain the constitutionality of the scale-down of benefits on the ground that it is rationally related to the scale-down in earning capacity due to normal retirement." *Cruz,* 247 N.W.2d at 771.

We agree with the sound reasoning of the *Cruz* case that a worker's level of compensation often decreases upon attaining the age of 65 as a result of retirement, reduction in work, or other reasons. The General Assembly had a rational basis for enacting KRS 342.730(4), and "[i]t is not the place of this Court to question the wisdom or efficiency of the legislature acting within the constitutional limits of its power." *Estridge, supra,* at 655. We hold KRS 342.730(4) to be constitutional.

The decision of the Board is therefore affirmed.

All concur.

---

3. Classifications based upon age are generally reviewed using a rational basis test and are not subjected to heightened scrutiny. *Cf.* 16A Am. Jur.2d *Constitutional Law* § 750; *Case of Tobin,* 424 Mass. 250, 675 N.E.2d 781, 784 (1997); *Vogel v. Wells Fargo Guard Services,* 937 S.W.2d 856, 858 (Tenn.1996); *Sasso v. Ram Property Management,* 431 So.2d 204, 221 (Fla.App. 1 Dist.1983), *aff'd* 452 So.2d 932 (1984), *appeal dismissed* 469 U.S. 1030, 105 S.Ct. 498, 83 L.Ed.2d 391 (1984).

4. KRS 342.730(4) was amended effective December 12, 1996, and now states in relevant part that income benefits "shall terminate as of the date upon which the employee qualifies for normal old-age Social Security retirement benefits under the United States Social Security Act, 42 U.S.C. secs. 301 to 1397f, or two (2) years after the employee's injury or last exposure, whichever last occurs."