**JEWISH HOSPITAL, Appellant,**

v.

**Marcia RAY; Hon. Bonnie Kittinger, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2003–CA–001378–WC.

Court of Appeals of Kentucky.

March 12, 2004.

James G. Fogle, Jane Ann Pancake, Louisville, KY, for Appellant.

No brief filed, for Appellee, Marcia Ray.

Before COMBS, JOHNSON and MINTON, Judges.

## OPINION

JOHNSON, Judge.

Jewish Hospital has petitioned for review of an opinion of the Workers' Compensation Board entered on June 4, 2003, which affirmed the Administrative Law Judge's determination that Marcia Ray has a 29% permanent impairment rating pursuant to the Fifth Edition of the American Medical Association (AMA) *Guides to the Evaluation of Permanent Impairment.* Having concluded that the Board has not overlooked or misconstrued controlling statutes or precedent or committed an error in assessing the evidence so flagrant as to cause gross injustice,[1] we affirm.

Ray began working for Jewish Hospital in 1981 as a registered nurse. On July 1, 2000, Ray was injured during the course of her employment when she slipped and fell in the hospital cafeteria during her lunch break. Ray suffered injuries to her left hand, neck and lower back. As a result of her injuries, Ray underwent surgery on January 29, 2001.[2] On April 25, 2002, Ray filed an application for resolution of injury claim with the Department of Workers Claims.[3]

On December 30, 2002, the ALJ rendered an opinion, award and order regarding Rays claim. Among other things, the ALJ awarded Ray permanent partial disability benefits based on a 29 impairment rating pursuant to the Fifth Edition of the AMA *Guides.* The ALJ's opinion, award and order stated, in relevant part, as follows:

All of the physicians who have provided impairment ratings in this case, evaluated the Plaintiff after March 1, 2001, the date on which the workers' compensation Commissioner proclaimed, through certification, that the [Fifth] Edition of the AMA *Guides* shall be the "latest available edition" under the Workers' Compensation Act. KRS 342.730(1)(b)[ ] requires that a permanent partial disability determination be based on impairment ratings using the latest available edition of the AMA *Guides.* Although the issue is not entirely and finally settled in case law as of this date, the undersigned Administrative Law Judge is of the opinion that medical evaluations after March 1, 2001 should include impairment ratings derived pursuant to the Fifth Edition of the AMA *Guides.*

---

1. *Western Baptist Hospital v. Kelly,* Ky., 827 S.W.2d 685, 687–88 (1992).

2. Ray had a cervical MRI performed on December 9, 2000, which revealed a disc protrusion at disc level C4–5. Shortly thereafter, Ray was referred to Dr. David Petruska, who recommended surgery.

3. Aside from a three-week vacation that she took in July 2000, Ray worked up until the time of her surgery on January 29, 2001. Ray returned to work approximately four months after the surgery was performed and she is currently employed by Jewish Hospital.

The ALJ had the benefit of several evaluations and opinions concerning Ray's impairment rating prior to rendering her decision. In particular, Dr. Petruska, who evaluated Ray's condition on February 26, 2002, assigned a 30% permanent impairment rating.[4] Dr. Petruska based his assessment on the Fifth Edition of the AMA *Guides*. Dr. S. Pearson Auerbach, who evaluated Ray's condition on July 1, 2002, assigned a 32% permanent impairment rating based on the Fifth Edition of the AMA *Guides*.[5] In addition, Dr. Frank Wood also evaluated Ray's condition. Dr. Wood assessed Ray's condition under both the Fourth and Fifth Editions of the AMA *Guides*. Dr. Wood indicated that a 15% impairment rating would be appropriate under the Fourth Edition of the AMA *Guides* and that a 25% impairment rating would be appropriate under the Fifth Edition of the AMA *Guides*.[6] Dr. Wood submitted his evaluation on August 2, 2002.

Ray appealed the ALJ's award and on June 4, 2003, the Board entered an opinion affirming in part, vacating in part, and remanding the claim to the ALJ. The Board's opinion stated, in relevant part, as follows:

> Until there is some definitive authority to the contrary, the Board continues to believe that when a claim transcends the period of applicability of the

[Fourth] and [Fifth] Editions of the AMA *Guides*, the selection of a permanent impairment rating may be influenced by the date upon which the physician rendered his opinion and whether that physician's opinion is credible.... We take care to note that we find no directive in the current case or statutory law requiring the fact-finder to reject, as a matter of law, any permanent impairment rating assessed by a medical expert under the [Fourth] Edition of the AMA *Guides* in the context of an evaluation taking place after March 1, 2001. We do not interpret the ALJ's decision in the case *sub judice* as indicating an understanding on her part that she was required, as a matter of law, to discard [any assessments based on the [Fourth] Edition of the AMA *Guides* ]. However, we believe the ALJ may ... reject as lacking in probative value, a [Fourth] Edition impairment rating assessed for an injury occurring prior to March 1, 2001, but pursuant to an evaluation and report generated after that date.[7]

This petition for review followed.

█ Jewish Hospital claims that the Board erred by concluding that the ALJ was permitted to rely on the Fifth Edition of the AMA *Guides* in determining Ray's impairment rating. In sum, Jewish Hospi-

4. Dr. Petruska assigned a 25% impairment rating to Ray's cervical spine and a 5% impairment rating to her lumbar spine. Dr. Petruska added these two percentages together to arrive at a total whole body impairment of 30%.

5. In his report, Dr. Auerbach indicated that his assessment was based on the combined value of 28% for Ray's cervical fusions and 5% for her chronic lumbosacral strain. While the sum of these two ratings is 33%, he set the combined rating at 32%.

6. In his report, Dr. Wood stated that it was improper to rate Ray's lower back condition

under the AMA *Guides*, regardless of whether the Fourth or Fifth Edition of the AMA *Guides* was used. Dr. Wood opined, *inter alia*, that Ray's lower back problems "were neither caused by the July 1, 2000, injury nor brought to disabling reality by that injury." Dr. Wood further opined that Dr. Petruska inappropriately "added" rather then "combined" the values for Ray's cervical and lumbosacral impairment, resulting in an erroneous 30% impairment rating as opposed to a 29% impairment rating.

7. The Board vacated and remanded on the issue of Ray's average weekly wage.

tal contends that the ALJ was required to utilize the version of the AMA *Guides* in effect on the date Ray was injured, July 1, 2000, when determining her impairment rating. We cannot agree.

■ It is well-established that the function of this Court in reviewing the Board is to correct the Board only where the [ ] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice.[8] Pursuant to KRS[9] 342.730(1)(b), an injured workers impairment rating is to be determined by utilizing the latest available edition of the AMA *Guides*. The statute provides, in relevant part, as follows:

> For permanent partial disability, sixty-six and two-thirds percent (66–2/3%) of the employee's average weekly wage but not more than seventy-five percent (75%) of the state average weekly wage as determined by KRS 342.740, multiplied by the permanent impairment rating caused by the injury or occupational disease as determined by "Guides to the Evaluation of Permanent Impairment," American Medical Association, latest edition available[.]

Pursuant to 803 KAR[10] 25:010 § 1(9), the "latest available edition" is defined as:

> [T]hat edition of the "Guides to the Evaluation of Permanent Impairment" which the commissioner has certified as being generally available to the department, attorneys, and medical practitioners, by posting prominently at the department's hearing sites the date upon which a particular edition of the "Guides to the Evaluation of Permanent Impair-

ment" is applicable for purposes of KRS Chapter 342.

The Fifth Edition of the AMA *Guides* was certified by the Commissioner of the Department of Workers' Claims as being the "latest edition available" on March 1, 2001. As previously discussed, Ray filed her claim for benefits on December 30, 2002. Thus, the "latest edition available" at that time was the Fifth Edition.

Jewish Hospital asserts that a change in the latest edition of the AMA *Guides* is the legal equivalent of a statutory amendment by the Legislature. The argument follows that the ALJ's decision to utilize the Fifth Edition of the AMA *Guides* in determining Ray's impairment rating constituted a retrospective application of KRS 342.730(1)(b) in violation of KRS 446.080(3), which provides that "[n]o statute shall be construed to be retroactive, unless expressly so declared." Jewish Hospital cites *Spurlin v. Adkins*,[11] in support of its argument. Therein, the Supreme Court of Kentucky stated that "in instances where the amendment at issue has affected the level of income benefits payable for a worker's occupational disability, the Court has consistently determined that ... the law on the date of injury or last injurious exposure controls."[12]

First and foremost, we are unpersuaded that a change in the latest edition of the AMA *Guides* is the legal equivalent of a statutory amendment. Jewish Hospital cites no case law in support of this contention and we are of the opinion that the language "latest edition available" contained in KRS 342.730(1)(b) reflects nothing more than a conscious regard on the part of the Legislature of the ever-evolving

8. *Western Baptist,* 827 S.W.2d at 687–88.

9. Kentucky Revised Statutes.

10. Kentucky Administrative Regulations.

11. Ky., 940 S.W.2d 900 (1997).

12. *Id.* at 902.

medical standards applicable to work-related injuries.

◼ Moreover, even if we were to assume that the adoption of each subsequent version of the AMA *Guides* represents a statutory amendment, Jewish Hospital's argument still fails. It is well-established that workers' compensation statutes are to be interpreted in a manner consistent with their munificent and beneficent purpose.[13] As previously discussed, KRS 342.730(1)(b) requires that income benefits for permanent partial disability be based on a permanent impairment rating as determined by the "latest edition available" of the AMA *Guides*. In order to accept Jewish Hospital's argument, we would have to read the statute as meaning that an injured worker's permanent impairment rating is to be determined by the "latest edition available [*at the time of the injury*]" [emphasis added]. Had the Legislature intended such a result, surely it would have included the phrase "at the time of the injury." To hold otherwise would contravene the very purpose of the Workers' Compensation Act, which is to aid injured or deceased workers or their dependents.

Based on the foregoing reasons, the opinion of the Workers' Compensation Board is affirmed.

ALL CONCUR.

---

13. *See Dick v. International Harvester Co.,* Ky., 310 S.W.2d 514, 515 (1958) ("[w]e approach [this issue] under the influence of the remedial principle of workmen's compensation and the development and progress of legislation to accomplish its humane and beneficent purpose").