Richard SCHMIDT, Appellant,

v.

SOUTH CENTRAL BELL; Hon. R. Scott Borders, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2010–CA–000986–WC.

Court of Appeals of Kentucky.

May 13, 2011.

Wayne C. Daub, Louisville, KY, for Appellant.

James B. Cooper, Lexington, KY, for Appellee, South Central Bell.

Before LAMBERT, MOORE, and NICKELL, Judges.

## OPINION

LAMBERT, Judge:

Richard Schmidt has petitioned this Court for review of the decision of the Workers' Compensation Board (Board), which affirmed the decision of the Administrative Law Judge (ALJ) finding that South Central Bell was no longer responsible for the payment of future medical payments based upon the $3,500.00 cap on the amount of medical expenses an employer must pay in the version of Kentucky Revised Statutes (KRS) 342.020 in effect at the time of Schmidt's injury. Because we agree with Schmidt that the amendment to KRS 342.020 removing the cap was retroactive, and therefore applied to him, we reverse the Board's decision.

On August 6, 1962, thirty-year-old Richard Schmidt was working as an installer/repairman for Southern Bell Telephone & Telegraph Co., now South Central Bell.[1] That day, Schmidt was involved in a work-related accident when his arm came into contact with an energized telephone wire caused by a downed 7200–volt power line. As a result, Schmidt suffered extensive burns to his right upper and lower left extremities, among other areas. Ultimately, his entire right arm and his left leg below the knee were amputated. He underwent several surgeries and uses a prosthetic leg. Schmidt collected temporary total disability benefits at a rate of $38.00 per week until he returned to work to a lighter but higher paying position on November 4, 1963. Schmidt and South Central Bell reached an agreement as to his compensation, which the old Workmen's Compensation Board approved on April 7, 1964. In doing so, the old Board awarded Schmidt $38.00 per week for a total of $13,687.60 to be paid from the Subsequent Claims Fund. Schmidt retired from South Central Bell in the 1970s and has not worked since his retirement.

In 1994, thirty years after the settlement agreement was approved, South Central Bell filed a motion to reopen to contest medical expenses for what it alleged to be excessive prescriptions for Valium and Demerol. The parties eventually settled the matter, and the ALJ assigned to decide the medical fee dispute closed the file in 1997.

1. For ease of understanding, we shall refer to the employer as South Central Bell in this opinion.

On September 24, 2008, more than ten years later, South Central Bell filed another motion to reopen to contest medical expenses. This time, South Central Bell contended that the medications prescribed to Schmidt were unreasonable and unnecessary for his treatment.[2] Additionally, and for the first time, South Central Bell raised the existence of the cap on medical expenses in the version of KRS 342.020 in effect at the time of Schmidt's injury. Based upon that version, South Central Bell argued that the medical expenses it had already paid exceeded the $3,500.00 cap.

The motion to reopen was granted to the extent that it was assigned to an ALJ for final adjudication, and the parties introduced proof into the record. Specifically related to the issue before this Court, South Central Bell introduced an affidavit from Sedgwick CMS claims representative Jeri Morris Long detailing the medical expenses that had been paid on Schmidt's behalf. As of December 29, 2008, $178,667.95 had been paid in medical expenses.

The parties filed briefs addressing their respective arguments. In his brief, Schmidt contended that the earlier version of the statute was void as against public policy and that the ongoing amendments to the statute were procedural meaning that the lifting of the cap should be given retroactive application. In its brief, South Central Bell pointed out that the legislature did not direct that the amendment to KRS 342.020 would be applied retroactively, and it argued that equitable estoppel and public policy arguments must fail.

In the opinion and order, the ALJ reviewed the applicable version of the statute and subsequent amendments, and agreed with South Central Bell that the statutory cap of $3,500.00 required the termination of South Central Bell's responsibility for future medical expenses. In so holding, the ALJ noted that the rights of the parties under the Workers' Compensation Act are controlled by the law in existence at the time of the injury and then found that the amendment to the statute eliminating the cap was not procedural or subject to retroactive application. Accordingly, the ALJ determined that the version of the statute in effect at the time of the 1962 injury, which included the cap on future medical expenses, applied. Finally, the ALJ did not find any violation of public policy.

Schmidt perfected an appeal to the Board, raising the same issues as in his brief before the ALJ. After thoroughly reviewing the applicable statute, the amendments to that statute, and the law, the Board affirmed the ALJ's decision. The Board specifically held that the legislature never provided that any of the amendments to the statute should have retroactive application and that the amendment removing the cap on future medical expenses was substantive in nature because it affected the amount of medical expenses an employer would owe. This petition for review follows.

■ Our review in this matter is premised on the Supreme Court of Kentucky's statement describing the role of this Court in workers' compensation actions as set forth in *Western Baptist Hospital v. Kelly*, 827 S.W.2d 685 (Ky.1992). This Court's function is to correct a decision of the Board only where we perceive that "the

---

**2.** South Central Bell later supplemented its motion to reopen with a Drug Utilization Advisory report dated July 18, 2008. The report showed that at that time, Schmidt was being prescribed six medications to treat his complaints of pain, sleep problems, depression, anxiety, and keratosis, and that the annual cost of those medications was $4,026.03.

Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* at 687–88. For purposes of this appeal, we must determine whether the Board misconstrued the controlling statutes and precedent related to the application of KRS 342.020.

It is well settled that "[w]orkers' compensation is a creature of statute, and the remedies and procedures described therein are exclusive." *Williams v. Eastern Coal Corp.*, 952 S.W.2d 696, 698 (Ky. 1997). It is also well settled that "[t]he rights of the parties in respect to compensation for injuries [become] fixed and vested on the date of the injury. Those rights [are] controlled by the law in existence at that time[.]" *Thomas v. Crummies Creek Coal Co.*, 297 Ky. 210, 179 S.W.2d 882, 883 (1944).

We begin our analysis by setting forth the version of KRS 342.020 (effective June 16, 1960) that was in effect at the time of Schmidt's injury in 1962:

(1) In addition to all other compensation provided in this chapter, the employer shall furnish for the cure and relief from the effects of an injury or occupational disease, such medical, surgical and hospital treatment, including nursing, medical and surgical supplies and appliances, as may reasonably be required at the time of the injury and thereafter during disability, or as may be required for the cure and treatment of an occupational disease, *but not exceeding a total expense to the employer of more than twenty-five hundred dollars.* If the employer fails to furnish such treatment reasonably, he shall be liable for the reasonable expense, within the limits of this section, incurred by or on behalf of the employee in providing such treatments. In an emergency, the employe may call in any available physician or surgeon to administer any first aid reasonably necessary at the expense of the employer within the limits of this section. The board, in its discretion, may apportion payments to be made under this section between hospitals and physicians in cases where their aggregate fees and charges would not exceed the maximum for which the employer is liable.

(2) However, further medical, surgical and hospital treatment, not to exceed an additional one thousand dollars, may be ordered by the board upon application and sufficient showing of justifiable need therefor.

(3) Where a compensable injury or occupational disease results in *the amputation of an arm*, hand, *leg* or foot, or the loss of hearing, or the enucleation of an eye or the loss of teeth, the employer shall initially furnish in addition to other medical, surgical and hospital treatment enumerated in subsections (1) and (2) of this section, a modern artificial member, and where required, proper braces *but the employer's liability for such artificial member or braces shall not, including his liability for medical, surgical and hospital treatment, exceed twenty-five hundred dollars.* [Emphasis added.]

There is no dispute that the version of the statute in effect in 1962 included a $3,500.00 cap on medical expenses that an employer must pay.

In its opinion, the Board includes newer versions of the statute that include amendments made by the legislature in 1964 and 1972, which removed the medical expenses cap. The Board accurately described the legislative history of the statute as follows:

From a review of the legislative history of KRS 342.020, it is clear starting in 1964, the legislature had amended para-

graph (1) of KRS 342.020 to reflect that the cap for employers' liability for future medical expenses incurred to treat injuries increased from $2,500.00 to $3,500.00. The 1964 legislature also amended paragraph (2) of KRS 342.020 when it provided that further medical, surgical and hospital treatment may be ordered by the old Board upon application and sufficient showing of justifiable need. Finally, by 1972, the statutory cap contained in KRS 342.020(1) was removed entirely to the extent that the legislature required the employer to pay for the cure and relief from the effects of the injury such medical, surgical and hospital treatment, including nursing, medical and surgical supplies and appliances as may reasonably be required at the time of the injury and thereafter during disability.

Schmidt contends that the amended version of the statute should apply to him so that he would not be subject to the $3,500.00 statutory cap. We agree.

At the outset, we recognize that "[n]o statute shall be construed to be retroactive, unless expressly so declared." KRS 446.080(3). In its opinion, the Board specifically noted that the legislature never provided in any version of the statute that the amendments were to have retroactive application.

■ There is, however, an exception to this rule where the amendment represents a procedural or remedial change only and is not substantive in nature:

[L]egislation has been applied to causes of action which arose before its effective date, in the absence of an express declaration that the provision is to be so applied, in those instances where the courts have determined that the provision was remedial or procedural in nature and that retroactive application of

the provision was consistent with the legislative intent. See KRS 446.080(1). *Spurlin v. Adkins,* 940 S.W.2d 900, 901 (Ky.1997). The *Spurlin* Court went on to state:

Amendments have also been found to be remedial where they corrected apparent oversights in the prior law. . . .

By contrast, in instances where the amendment at issue has affected the level of income benefits payable for a worker's occupational disability, the Court has consistently determined that the amendment was substantive in nature and that the law on the date of injury or last injurious exposure controls. An amendment which becomes effective after that date is considered *to* be substantive in nature and may not be applied to claims which arose before the amendment's effective date.

*Id.* at 902.

In *Peabody Coal Co. v. Gossett,* 819 S.W.2d 33 (Ky.1991), the Supreme Court of Kentucky permitted retrospective application of the 1987 amendment to the reopening statute, despite the legislature's failure to specifically state so. In this instance, the Court held that the amendment at issue was remedial and that it was therefore subject to retroactive effect.

A retrospective law, in a legal sense, is one which takes away or impairs vested rights acquired under existing laws, or which creates a new obligation and imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past. Therefore, despite the existence of some contrary authority, remedial statutes, or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of such rights, do not normally come within the legal conception of a retro-

spective law, or the general rule against the retrospective operation of statutes. In this connection it has been said that a remedial statute must be so construed as to make it effect the evident purpose for which it was enacted, so that if the reason of the statute extends to past transactions, as well as to those in the future, then it will be so applied although the statute does not in terms so direct, unless to do so would impair some vested right or violate some constitutional guaranty. 73 Am.Jur.2d *Statutes* § 354 (1974) (Footnotes omitted.) *Peabody Coal Co.*, 819 S.W.2d at 36.

In *Kentucky Ins. Guar. Ass'n v. Jeffers ex rel. Jeffers*, 13 S.W.3d 606 (Ky.2000), the Supreme Court relied on its prior holding in Peabody and extensively addressed the difference between a remedial statute and a substantive one.

The general rule is that a statute, even though it does not expressly state, has retroactive application provided the statute is remedial. This is a fundamental rule of statutory construction which does not invade the province of the legislature. Remedial means no more than the expansion of an existing remedy without affecting the substantive basis, prerequisites, or circumstances giving rise to the remedy.

*Black's Law Dictionary*, (6th ed.1990), defines remedial statute, and in the third paragraph provides a clear and unequivocal guideline for identifying remedial statutes:

The underlying test to be applied in determining whether a statute is penal or remedial is whether it primarily seeks to impose an arbitrary, deterring punishment upon any who might commit a wrong against the public by a violation of the requirements of the statute, or whether the purpose is to measure and define the damages

which may accrue to an individual or class of individuals, as just and reasonable compensation for a possible loss having a causal connection with the breach of the legal obligation owing under the statute to such individual or class.

The *Black's Law Dictionary* definition is consonant with this Court's holding in *Peabody, supra.*

This Court has described remedial statutes as those relating "to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of such rights." *Id.* at 36 (citing 73 Am.Jur.2d *Statutes* § 354 (1974)).

A remedial statute is defined in the first full paragraph of 73 Am.Jur.2d *Statutes* § 11 (1974), titled "Statutes Regarded as Remedial," as follows:

Legislation which has been regarded as remedial in its nature includes statutes which abridge superfluities of former laws, remedying defects therein, or mischiefs thereof, whether the previous difficulties were statutory or a part of the common law. Remedial legislation implies an intention to reform or extend existing rights, and has for its purpose the promotion of justice and the advancement of public welfare and of important and beneficial public objects. The term applies to a statute giving a party a remedy where he had none, or a different one, before. Another common use of the term "remedial statute" is to distinguish it from a statute conferring a substantive right.

Both definitions of a remedial statute were approved by the Kentucky Court of Appeals in *Kentucky Insurance*

*Guaranty Association v. Conco, Inc.,* Ky.App., 882 S.W.2d 129 (1994).

*Jeffers,* 13 S.W.3d at 609–10.

In *Kentucky Insurance Guaranty Association v. Conco, Inc.,* 882 S.W.2d 129 (Ky. App.1994), we addressed a situation similar to the one before us and find its statement of the law to be controlling. In *Conco,* KIGA assumed coverage when Conco's carrier became insolvent. At that time, a statutory cap was in place that limited KIGA's coverage of medical expenses to $50,000.00. That cap was later lifted by amendment. Relying on *Peabody,* we held that this amendment constituted remedial legislation and was therefore retroactive:

> In *Peabody Coal,* the Kentucky Supreme Court held that an amendment to a statute creating a new standard for reopening workers' compensation awards was to be applied retrospectively, and that the general rule against retrospective operation of statutes does not apply to amendments that are remedial. Here, the subject statute is remedial in nature since it "do[es] not create new or take away vested rights, but only operate[s] in furtherance of the remedy." *Peabody Coal,* 819 S.W.2d at 36, *citing* 73 Am.Jur.2d *Statutes* § 354 (1974). In short, it is apparent to this Court that the legislature, in amending the statute to remove the cap on KIGA's liability for workers' compensation claims, intended to enhance the protection of claimants such as Mr. Mercer and employers such as Conco.

*Conco,* 882 S.W.2d at 131–32.

This interpretation is in line with the "basic concept of statutory interpretation as set out in KRS 446.080(1), that 'all statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the Legislature.'" *Jeffers,* 13 S.W.3d at 610, *quoting*

*Conco,* 882 S.W.2d at 130. *See also Dingo Coal Co., Inc. v. Tolliver,* 129 S.W.3d 367, 370 (Ky.2004) (holding that amendment to reopening statute had retroactive application, as the amendment did not have any effect on the substantive proof requirement necessary to obtain greater benefits, but merely changed a procedural requirement in whether the motion to reopen would be granted); *Moss v. Holloway Constr. Co.,* 644 S.W.2d 331, 332 (Ky.1982) (holding that statute permitting coverage for chiropractic services had retroactive application, as "[t]he change merely procedurally designated a new source of treatment.").

█ In the present matter, we hold that the amendments in 1964 and 1972 removing the statutory cap on future medical expenses represented a remedial, procedural change as described in *Conco.* These amendments did not constitute substantive changes in the law. On the contrary, the amendments at issue did not create or take away any vested rights, but only operated to further Schmidt's remedy. Therefore, we hold that the amendments apply to Schmidt and that the Board misconstrued the controlling statutes and law in upholding the ALJ's decision that South Central Bell was no longer responsible for the payment of his future medical expenses.

For the foregoing reasons, the opinion of the Workers' Compensation Board upholding the ALJ's decision is reversed, and this matter is remanded for further proceedings in accordance with this opinion.

ALL CONCUR.