## Commonwealth, By et al. v. Southern Pacific Company.

## Same v. Louisville & Nashville Railroad Company.

(Decided May 25, 1915.)

Appeals from Franklin Circuit Court.

1. Corporations—Organization Tax.—Section 4225, Kentucky Statutes, imposing an organization tax on corporations is not retroactive. The tax is imposed on the capital stock of corporations organized after its enactment and upon the increase of stock issues made after its enactment by all corporations.

2. Corporations—Organization Tax.—A corporation created by a special act of the legislature, or by Chapter 56 of the General Statutes, does not subject its original stock issues to the organization tax and become a new corporation as if organized under Chapter 32 of the Kentucky Statutes by formally accepting the provisions of the Constitution and rendering itself amenable thereto. It remained a corporation organized under its old charter.

3. Corporations—Organization Tax.—A corporation organized under special act of the legislature, or under the provisions of Chapter 56 of the General Statutes, subjects its original stock issues to the organization tax whenever it amends its charter or files corporation papers which so radically and materially change its original scope, rights and powers as to amount to a dissolution of the old corporation and the creation of a new one.

4. Railroads—Change of Corporate Domicile—Not New Corporation—Organization Tax.—Where a railroad company, created by special act of the legislature, by amendments, changed its corporate domicile within this State and increased its capital stock with the right to classify the increased issue into preferred and common shares, it was not such a radical or material change in its scope, rights and powers as to make it a new corporation and subject its original capitalization to the organization tax.

5. Railroads—Maintenance of Telegraph and Telephone Lines.—Organization Tax.—A railroad company, created by special act of the legislature, with power to do a railroad business and become a common carrier for hire, had the power, as an incident to its business, of maintaining and operating telegraph and telephone lines along its right-of-way for aiding in the movement and operation of its trains. Where such corporation, by amendments, increased its capital stock and acquired the right also to transmit telephone and telegraph messages for hire and become a common carrier of such, it did not so change the scope, rights and powers of the original corporation as to create a new corporation and thereby subject its original stock issue to the organization tax.

O'REAR & WILLIAMS, J. P. HOBSON & SON and J. C. DUFFY for appellant.

H. L. STONE and C. H. MOORMAN for appellee, Louisville & Nashville Railroad Company.

HUMPHREY, MIDDLETON & HUMPHREY for appellee, Southern Pacific Company.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

These actions were brought under Section 4225 of the Kentucky Statutes by the Commonwealth of Kentucky, on relation of revenue agent, against the appellees, railroad corporations, to recover an organization tax on the original capitalization of each company, together with a 20 per cent penalty. Demurrer was sustained to the petition in each case, and the Commonwealth appeals. The facts and proceedings are so similar that they may be considered and disposed of together.

In 1884, the Southern Pacific was chartered by a special act of the Legislature of Kentucky, with a capital stock of $200,000,000.

In 1850, the Louisville & Nashville Railroad Company was chartered by a special act of the Legislature of Kentucky, with a capital stock of $60,000,000.

It is this capitalization, authorized by special acts prior to the enactment of Sec. 4225, Kentucky Statutes, which the appellant claims is subject to the organization tax of one-tenth of one per centum.

No organization tax was paid by either of these companies on the capitalization above named because the special acts did not require it, and there was no general law on the subject.

The present Constitution was adopted in 1891, and the legislature, to carry out the letter and spirit of that document forthwith revised the statute laws of the State. An act on revenue and taxation was a part of the revision, and Section 4225, already referred to, is a part of that act. At the same session the Legislature revised the general corporation laws, then known as Chapter 56, and in lieu thereof enacted what is now Chapter 32 of the Kentucky Statutes. Section 570 of Chapter 32 provides that:

"No law shall be passed for the benefit of, or in the interest of, any corporation heretofore created or organized by or under the laws of this State, or any other State; nor shall any corporation avail itself of the provisions of this chapter unless such corporation shall have previously, by a resolution adopted by its board of directors and filed in the office of the Secretary of this State, accepted the provisions of the Constitution of this State."

By Section 574, any corporation theretofore created or organized, and which has accepted the provisions of the Constitution as provided above, may amend its charter "in the manner provided for the amendment of articles of incorporation of corporations organized under this chapter and the laws relating to such corporations."

Any such corporation may increase or reduce its capital stock in the manner prescribed by Section 553.

In 1902, the Louisville & Nashville Railroad adopted resolutions which it caused to be filed in the office of the Secretary of State, and thereby accepted the provisions of the new Constitution.

The Southern Pacific took the same step in 1894. At the same time it amended its charter, by complying with

Section 553, for the purpose of increasing its capital stock $40,000,000. And again in 1907, in the same manner, it increased its capital stock $36,000,000, and again in 1909, an increase of $100,000,000 was made to its capital stock. In 1910, it reduced its capital stock by $1,548,200, and in 1914, by amendment, it changed its principal office or place of business in the State from Beechmont to Anchorage. On all of these increases the organization tax was paid. Except the increase of its capital stock and change of its corporate domicile, the only privilege named in the Southern Pacific amendments, and not theretofore enjoyed, was the power to classify these increased stock issues into common and preferred shares, as authorized by Section 564 of the Kentucky Statutes. No provision for classification was made in the original charter.

In December, 1911, the Louisville & Nashville amended its charter, by complying with Section 553, and thereby was empowered to exercise the rights and privileges of a telegraph and telephone company, not only for the conduct of its railroad business, but as a common carrier of messages for hire for the general public. In October, 1912, by another amendment, $12,000,000 was added to its capital stock and the organization tax was paid thereon.

As already stated, the petitions seek to lay the tax only on the original capitalization, and they are based on Section 4225 of the Kentucky Statutes, which provides for an organization tax, and is as follows:

"Every corporation which may be incorporated by or under the laws of this State, having a capital stock divided into shares, shall pay into the State Treasury one-tenth of one per centum upon the amount of capital stock which such corporation is authorized to have, and a like tax upon any subsequent increase thereof. Such tax shall be due and payable on the incorporation of the company and on the increase of the capital stock thereof, and no such corporation shall have or exercise any corporate powers until the tax shall have been paid, and upon payment it shall file a statement thereof with the Secretary of State."

The petitions allege, as to each corporation, that, by the several charter amendments referred to, the corporations were in effect reorganized and at once became liable for the organization tax on all the capital stock issued

prior to the new Constitution, and upon which no tax had ever been paid.

So the question arises, is the corporation liable now for tax on that part of its capital stock which was authorized by the legislature and issued by the company before the present Constitution was adopted, and before the passage of the act levying the tax? To answer this question in the affirmative, the statute must be construed as retroactive; that is, we must not hold that the legislature intended to impose an organization tax on stock already authorized and issued when the act was passed. If that was not the purpose of the section, then, in order for the appellees to be liable for the tax, we must hold that the amendments referred to so changed the scope, rights, and powers of the old corporations as to make them equivalent to new corporations organized under the present general law. Clearly, the statute was intended to have only a prospective operation, and it would do violence to its language to construe it otherwise. It applies to corporations organized at any time after Sec. 4225 should become effective, and also to any increase of stock issued thereafter by any corporation, without reference to when it was organized. It provides that the tax on stock issued by corporations *which may be* organized shall be "due and payable on the incorporation of the company," or when any increase is made in capitalization. Any old corporation, which has accepted the provision of the Constitution, is permitted to amend its charter, or increase its capital stock by paying the organization tax on the increase (Secs. 553 and 574). To give the act a retroactive meaning would be to say that the legislature by the language of Sec. 4225, adopted in 1892, desired to lay an organization tax on the Southern Pacific, and make it payable in 1884, and the Louisville & Nashville in 1850—a tax barred by limitation when it was levied. And, when it is remembered that a 20 per centum penalty is imposed by another section of the same chapter on delinquents whose taxes are collected by suit of the Commonwealth, it can hardly be believed that the Legislature intended to impose a tax under such terms that the taxpayer will necessarily be burdened with the penalty.

Chapter 56 lays down the rules for construing the statutes. Section 459 of that chapter reads:

"No part of this revision is retrospective unless expressly so declared."

In Commonwealth v. Licking Valley Building Association, 118 Ky., 792, discussing Sec. 4225, it is held:

"The act is not retroactive, but it applies to all corporations formed after it takes effect, and Section 4225, Kentucky Statutes, has been in force since November 11th, 1892."

Appellant, by its reply brief, concedes that the section is not retroactive. But it is insisted that these corporations have, nevertheless, by their amendments subjected their original capitalization to the organization tax. Using the language of counsel for appellant:

"Our position is that every corporation organized under the Kentucky Statutes must pay the tax, and that old companies amending their charters and thus acquiring the powers they did not before possess are corporations organized under the Kentucky Statutes after such steps are taken."

After a careful consideration of Chapter 32, we have failed to find anywhere any indication of a purpose to tax original issues merely because the old corporation, having accepted the Constitution, avails itself of the new laws (Chapter 32), by amendments to acquire powers and privileges, not inconsistent with its charter, it did not before possess. The only price which the legislature named for these new powers was acceptance of the Constitution, and thereby a surrender of all exclusive privileges enjoyed under its old charter. The legislature could have provided that old corporations should, as a condition precedent, accept the Constitution, and also pay an organization tax on the original stock issues. But they did not go that far. They merely provided that an organization tax should be paid by them on all new, that is, increased issues authorized by the new law. As we see the case, the test of liability for the organization tax on the old issues is not the acquisition, by amendment, of new powers merely—the new powers must be of such a material and radical nature as to create in fact a new corporation.

Counsel for both parties call attention to the circumstances which gave rise to the legislation referred to, particularly sections 570 and 573. Prior to the present Constitution, many corporations secured charters by special acts of the legislature in which they were granted valuable and exclusive privileges. The Constitution, and the legislation enacted pursuant thereto, terminated

that character of corporate creation, and formulated a plan which in time will operate to make all corporate charters, old and new, uniform in their essential characteristics. To that end, inducements were offered for the surrender of all special and exclusive privileges theretofore granted by special acts of the legislature. In order for an old corporation to avail itself of these inducements it was required to formally accept the provisions of the new Constitution, and it was further stipulated by Section 570 that:

"No law shall be passed for the benefit of or in the interest of any corporation heretofore created by or under the laws of this State, or any other State; nor shall any corporation avail itself of the provisions of this chapter, unless such corporation shall have previously * * * accepted the provisions of the Constitution of this State."

Section 573, not only repealed so much of all charters and articles of incorporation theretofore granted which are inconsistent with the provisions of this chapter (32)—the repeal to be effective on September 28, 1897—but provided that the provisions of the chapter shall automatically apply to all corporations created under the laws of this State the same as if organized under this chapter. Among the benefits which this chapter affords to old corporations, as a condition for surrender of their special privileges, is the power to amend their charter, and to alter their capital stock. As already stated, the only price the legislature exacted for these benefits was a formal acceptance of the Constitution, and this, in effect amounted to a surrender of the old exclusive privileges. It is not now contended that the mere acceptance of the Constitution so changes the character of a corporation as to subject it to the organization tax. Appellant concedes that by a simple acceptance of the provisions of the Constitution, the corporation remained a corporation organized under its old charter, and so long as it remained in that condition no tax could be demanded of it, for it is admitted that the surrender of all special privileges was deemed by the legislature an adequate consideration for the opportunity given to avail itself of all the benefits conferred by the new statutes.

Appellant contends, however, that when an old corporation goes further and amends its articles it becomes

a corporation organized as one under the new law, and, having thereby changed its status, it is liable for the organization tax on all of its capitalization upon which it has never paid the tax. It argues that this is an additional price which the State charges for the new rights enjoyed by it. But we do not believe it is a sound reasoning to say that because new corporations must pay the organization tax, old corporations should, therefore, pay on their original tax-free issues, notwithstanding the privileges they have surrendered. It was as competent for the legislature in 1884, and in 1850, to authorize the appellees to issue the stock without exacting this tax as it was for the Legislature in 1892, to exact it on all new issues and new corporations. No one undertakes now to say that the old legislation was wise, and everyone must agree that the Constitution and legislation of 1892 brought an end to a most pernicious practice and gave system to corporate creation, and regulation where chaos reigned before. But, in giving effect to these new laws, this court can go no further than the legislature evidenced a purpose to go. If the legislature did not correct all the old inequalities, neither can this court. If the legislature did not exact an adequate price of old corporations for participating in the benefits of the new law, neither can we. But the bare offer of all the benefits and privileges of the new law was deemed by the legislature, as argued by counsel for appellant, an adequate consideration for their surrender of special and exclusive privileges. We can not, however, read in or into the statute a legislative purpose to exact of them an additional price merely because they take advantage of the privileges offered. No such intention is expressed or to be inferred from anything in the statutes.

The Constitution and statutes expressly recognize the right of a corporation, in existence prior to the adoption of either, to continue its corporate existence, exercising not only the powers previously possessed by it which are not contrary to the Constitution and statutes, but, upon accepting the Constitution, such added powers as are specially conferred by the Kentucky Statutes. The absence of a purpose to levy such a tax upon old corporations is evidenced by Sections 555 and 556, which permit the consolidation into a single corporation of "two or more corporations organized under this chapter, or by the laws of this or any other State."

It is especially provided:

"That no consolidated company formed under this chapter, or the laws of this State, shall be required to pay any organization tax, except that, if in the consolidation the capital stock of the consolidated company be increased, or be thereafter increased to an amount exceeding the aggregate capital stock of constituent companies at the time of the consolidation."

In that event an organization tax must be paid upon the excess or increase. There is nowhere an intimation of an organization tax on the stock of a constituent Kentucky corporation which has not theretofore paid the tax. It is expressly provided, however, that if one of the constituents has been organized under the laws of another State where no organization tax was required or paid, or where less tax is exacted than in Kentucky, then the organization tax shall be paid on that part of the stock of the consolidated corporation.

It seems to us the sole question in these cases is whether any of the amendments served to dissolve the old corporation and create a new one. If so, then its capitalization becomes new, and is subject to the payment of an organization tax. But the mere filing of an amendment cannot have that effect. The new law not only recognizes that right in an old corporation which has rendered itself amenable to the new law, but it is one of the rights offered as an inducement to become thus subject to the new law and surrender its old exclusive privileges. So long as the right to amend is fairly used, and the amendments do not, in fact, create a new corporation—that is, are not in conflict with the plan and scope of the existing corporation, and are resorted to in good faith to accomplish or fairly enlarge those plans—such amendments cannot be said to have the effect of creating a new corporation. Of course, the organization tax cannot be escaped by substituting a new charter by way of amendment for an old charter. As illustrated by counsel for appellee, it is obvious that the legislature did not mean to allow, say a lumber company, created prior to or since the adoption of the present Constitution, to amend its articles of incorporation so as to create a railroad company in lieu. This would be the creation of a new corporation under the guise of an amendment to an old one. If the amendment is such as to create what is substantially a new corporation the organi-

zation tax must be paid, because, by virtue of the amendment, a new corporation comes into existence and the time of payment is fixed as ''on the incorporation of the company.'' So, as already stated, are the amendments in question germane to the original charters, or are the original charters supplemented to that extent that the corporation is a new or different one? In Clark and Marshall on Private Conporations, Volume 1, page 173, it is said:

''When the charter of a corporation is merely amended, and the amendment is accepted, the effect is not to destroy the old corporation and create a new one, but merely to change the constitution and powers of the old corporation; and it follows that the existing contract and property rights, and the existing obligations of the corporation, are not in any way affected.''

But appellant argues that the question as to liability in cases of this sort turns on whether the amendment is to a corporation charter wherein the organization tax has already been paid. In other words, it argues that the question of departure and materiality of the amendment goes only to corporations organized under the new law, and that an old corporation which has never paid an organization tax cannot amend its charter in any particular without subjecting itself to an organization tax on the original stock issues. In support of its position, it relies upon the case of Ohio Valley Tie Company v. Bruner, 148 Ky., 358. Before considering that case, it will be well to review the cases bearing upon this subject heretofore considered by this court, some of which are referred to in the Ohio Valley Tie Company case.

The first is Senn v. Levy, 111 Ky., 318. This was an action by creditors, under Section 574 of the statutes, to enforce a double liability against stockholders of the German-American Title Company. The stockholders resisted payment upon the plea that that company derived its corporate powers by a charter taken out under the provisions of the old law, Chapter 56 of the General Statutes, wherein no double liability was imposed. The German-American Real Estate Investment Company was so incorporated, but in 1894, after the adoption of Chapter 32 of the Kentucky Statutes, and in compliance therewith, its original articles of incorporation were amended by changing the corporate name to ''The German-

American Title Company," and the old certificates of stock were called in and other certificates were issued in the new name. Two years later the Title company went into the hands of a receiver, and Levy brought the suit. The court, in holding the stockholders to the double liability under the new law, said:

"The change made by the amendment was a radical one. A corporation exists only in its corporate name and the change of name was an abandonment, not only of the corporate name, but of the corporation itself."

Commonwealth v. Licking Valley Building Association, 118 Ky., 791. In 1886, the Building association was incorporated under Chapter 56 of the General Statutes. The charter expired by express terms in 1911, but in 1897 it filed additional or amended articles, and stipulated that it was desirous to *reincorporate and organize under the provisions of Chapter 32 of the Kentucky Statutes,* and for that purpose certain persons named, "now acting as such association, be, and are hereby, created a body corporate and politic under and by virtue of the laws of the State of Kentucky." While the stockholders remained the same, and all the business of the old corporation was vested in the new without transfer of the property, yet there was an actual and complete reorganization under the new law with new articles of incorporation minutely specifying its rights and powers. As stated by the court: "The amended articles of incorporation did more than conform to the new statute. They created a new corporation." The court held that its capital stock was subject to the organization tax. If one payment of the tax be the test of liability, the opinion might well have rested the case on that ground, for it was originally organized under the old chapter (56) which did not require the payment of an organization tax, and, as none was ever paid, it would have been liable therefor, if appellant's position in this case is correct, but the court did not so hold. Liability was fixed because the corporation had reorganized and filed new articles of incorporation in the manner provided by Chapter 32.

In the Ohio Valley Tie Company v. Bruner, 148 Ky., 358, already referred to, the Tie company was a corporation organized subsequent to the adoption of the present Constitution, and by virtue of Chapter 32 of the Kentucky Statutes, and, of course, it had paid an organiza-

tion tax as required by Section 4225. The term of its charter was fixed at 25 years, but before the term expired "it developed that certain of its internal affairs, as looking toward the further plans of its business, demanded a corporate existence beyond the time of its original charter life. It, therefore, prepared its amendment in 1910, whereby it provided that it should have a corporate existence 25 years from that date." When it offered its amended articles to the Secretary of State for filing, accompanied by the recording fees, the Secretary of State declined to record them unless there should again be paid to the State a tax of one-tenth of one per cent. upon the authorized capital stock. The Tie company appealed to this court from an adverse ruling of the lower court. The appeal presented but one question, and it was stated in the opening paragraph of the opinion, and that was:

"Whether a corporation which has once paid the organization tax as provided in Section 4225 of the Kentucky Statutes, must pay this tax again when it proceeds to extend its corporate existence by amendment as provided in Section 559 of the Kentucky Statutes."

It will be observed that the only purpose of the amendment was to extend its corporate existence, and the court was dealing with a corporation organized under Chapter 32 of the Kentucky Statutes, and which had necessarily paid its organization tax. As to such corporations having a "charter life in Kentucky under the present Constitution and the general corporation laws of the State," the court answered the question in these words:

"But as the statute now stands it (the tax) need be paid but once. Its terms exclude any other intent. Its provision is that the tax must be paid by every corporation 'which may be incorporated;' and further that the tax shall be due on 'the incorporation' of the company."

The court, however, qualifies this answer, even as to such corporations, as follows:

"If the corporation, however, should by amendment substantially change its scope, rights and powers, there might be a consequent right to exact a tax, but that question is not here for decision. The ground of its collection in such a state of case would rest upon the determination of whether the change were so substantial or material as to create in fact a new corporation.

"For the sake of clearness it is to be borne in mind that this decision applies to corporations which have once paid the tax."

Having thus limited the application of the opinion to corporations organized under the new chapter (32) and which have once paid an organization tax, and although the corporation was relieved of its second payment not only because it had paid the tax in the first place, but because the court must have necessarily concluded that the amendment did not substantially change the scope, rights and powers of the corporation, the opinion then indulges in some speculations which result in certain dicta that does support appellant's position. Notwithstanding the corporation under consideration was organized under Chapter 32 of the Kentucky Statutes, it cites in support of the dicta the Licking Valley Company case, *supra*, where a corporation which had been organized under the old law, Chapter 56 of the General Statutes, and was held liable for the organization tax because it had filed new articles of incorporation under Chapter 32 of the Kentucky Statutes. The dicta in the Ohio Valley Tie Company case is as follows:

"Should a corporation organized under Chapter 56 of the General Statutes, although already in possession of a corporate existence, seek the benefits flowing from the general corporation laws of the Kentucky Statutes, by organizing or amending under them it would need to pay its organization tax once. This was expressly held in Commonwealth v. Licking Valley Building Association, 118 Ky., 791, but it would need to pay the tax only once, just as those created under the present general laws need to pay only once."

As we have already indicated, the Licking Valley case decides but two propositions. First, Section 4225 of the statutes is not retroactive, and, second, if a corporation organized under the old law, Chapter 56 of the General Statutes, files new articles of incorporation, under Chapter 32 of the Kentucky Statutes, it operates to dissolve the old corporation and create a new one, and this new one must pay the tax. The ruling in the Licking Valley case is based upon the Senn-Levy case, *supra*, which enforced double liability against the stockholders of a Chapter 32 corporation, because the old Chapter 56 charter upon which they relied had been dissolved and the new corporation created in its stead. Considering the

question for decision in the Ohio Valley Tie case, the rule announced in connection therewith is in harmony with the manifest purpose of the lawmakers when Chapter 32 of the Kentucky Statutes was enacted. That is, if the corporation, whether organized under the special act of the Legislature, or under Chapter 56 of the General Statutes, or under Chapter 32 of the Kentucky Statutes, so amends its charter as to radically or materially change its original scope, rights and powers, then the organization tax on its original stock issues becomes due and payable. Not, as indicated in the dicta in the Ohio Valley Tie case, because the corporation has never paid an organization tax, but because it has become a new corporation or its equivalent, and is, therefore, liable as another new corporation for the organization tax.

The rule contended for by appellant, viz: To ascertain whether the organization tax has once been paid, is perhaps preferable, because of its simplicity and ease of application, but it must first have legislative approval. We understand the existing statutes to apply a different rule; that is, the amendment in question must amount to a radical or material change or departure from the corporation's original plans and purposes.

These appellees are still operating under their original charters. It cannot be said that the amendments gave them life. If they have not a corporate existence under their original charters they have none at all. In the case of the Southern Pacific, the amendments show only an increase in capital stock, and the change in its Kentucky domicile. The amendments conferred no other rights or powers; they did not even show what the corporation is or its purpose, or that it is chartered to engage in any business at all. Unless read in connection with the original charter they cannot have any meaning at all. We are unable to say, therefore, that they make such a substantial or material change in its corporate existence as to create a new corporation.

It cannot be said of the Louisville & Nashville Railroad Company that its old corporate existence was extinguished by the amendment. In the first place, the amendment showed on its face a contrary intention. It could have terminated its existence under the provisions of Section 554, which permits an old corporation to organize and become a "new corporation;" that is, the section permits an old corporation to cease to exist and a

new corporation to come into existence, "and become a corporation under this chapter." However, in reorganizing, the old corporation must execute and record its articles of incorporation just as a new corporation is required to do. But Section 574 permits old corporations which have accepted the Constitution to amend their articles of incorporation in the manner provided for amendment of articles of incorporation of corporations organized under Chapter 32. That is, old corporations are permitted either to amend or reorganize. If reorganized, then the tax must be paid on its entire capital stock; if an amendment, and its capital stock increased, it must pay on the increase. The Louisville & Nashville has amended, but we do not believe its amendments are of such a substantial or material character as to change its scope, rights and powers and create in fact a new corporation. The general business of the Louisville & Nashville Railroad Company, as shown by its original charter, is that of a common carrier by rail with all the rights and powers necessary and incident thereto. The amendments referred to gave it the right also of becoming a common carrier of telegraph and telephone messages for hire. As an incident to its original business it already had the right to construct and maintain telegraph and telephone lines along its right-of-way, as this was necessary in the operation and movement of its trains. Already having the power to serve itself in this regard, if, by amendment, it is permitted to serve the public in this way, it does not mean such a departure from its original purpose as to amount to the extinction of its old charter or the creation of a new one. There was no change made in the manner of its operation; its name remained the same; and none of the powers it had theretofore possessed were surrendered or taken from it. It has merely obtained the privilege of operating a telephone and telegraph system for hire if it should so desire. This extension of the powers it already possessed certainly cannot be said to have destroyed the old corporation and to have created a new corporation which is liable for an organization tax.

The judgment in each case is affirmed.