KENTUCKY INSURANCE GUARANTY ASSOCIATION, Appellant,

v.

Jordan JEFFERS, A Minor by and Through Her Next Friends Natural Guardians and Parents, David JEFFERS and Vickie Jeffers; Patricia Sebree, Individually and as Executrix of the Estate of Louis W. Sebree; Walter Lewis Individually and Co–Administrator of the Estate of Walter Ryan Lewis; Elizabeth Lewis Individually and Co–Administrator of the Estate of Walter Ryan Lewis; Daniel McCullah, Individually and as Guardian for Flossie McCullah; James A. Dienes, M.D.; Margarete Lockhard, Appellees,

and

Kentucky Academy of Trial Attorneys, Amicus Curiae.

No. 98–SC–0770–TG.

Supreme Court of Kentucky.

March 23, 2000.

Armer H. Mahan, Jr., Louisville, for appellant.

William B. Hoffman, Paul A. Casi II, Louisville, Douglas H. Morris II, Louisville, Larry B. Franklin, Louisville, Richard Hay, Somerset, Douglass Farnsley, Louisville, Susan P. Spickard, Louisville, William J. Driscoll, Louisville, William R. Garmer, Lexington, for appellee.

GRAVES, Justice.

The sole issue before this Court is whether a Legislative provision amending the Kentucky Insurance Guaranty Association Act, KRS 304.36–010 et. seq., to increase the amount of coverage from $100,000 to $300,000 in cases involving insolvent insurance companies is limited only to those cases in which the insolvency occurred after the effective date of the amended statute, or applies retroactively to all unresolved cases. We affirm the declaratory judgment of the Jefferson Circuit Court which ruled the amendment was remedial and had retroactive application.

PIE Mutual Insurance Company was a major medical malpractice insurance carrier providing professional liability insurance for numerous physicians in Kentucky. PIE was adjudged insolvent on March 23, 1998. Appellees are individuals who have medical malpractice claims against Kentucky physicians who were insured by PIE for acts of medical negligence. In all of

these actions, the remedy sought is compensation for damages allowed under Kentucky law.

Kentucky established the Kentucky Insurance Guaranty Association (KIGA), KRS 304.36–010 et. seq., to cover claims made against insureds whose carrier becomes insolvent. This non-profit unincorporated legal entity requires insurance carriers of most types of insurance, licensed to operate in Kentucky, to be members of the association. The statutory coverage limit by KIGA was $100,000 prior to July 15, 1998. In House Bill 415, the 1998 General Assembly amended many parts of the KIGA Act. In addition to other portions of the amendment, House Bill 415 provides for an increase in the maximum coverage from $100,000 to $300,000 per covered claim. KRS 304.36–080(1)(a)(3). This amendment to the statute became effective on July 15, 1998.

All of the actions concerning Appellees in this case were pending at the time House Bill 415 became effective. In all of the underlying malpractice actions, KIGA denied that the increased coverage applied to any PIE claims because PIE became insolvent before the effective date of House Bill 415.

The purpose of the KIGA Act, as amended, is:

> [T]o provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to the extent provided in this subtitle to minimize financial loss to claimants or policy holders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide a means of funding the cost of such protection among insurers. KRS 304.36–020.

As amended, the statute provides in pertinent part as follows:

> "Covered claim" means an unpaid claim, ... which arises out of and is within the coverage ... of an insurance policy to which this subtitle applies issued by an insurer, if the insurer becomes an insolvent insurer after June 16, 1972.... KRS 304.36–050(6)(a).

> [KIGA] shall: (a) Be obligated to the extent of the covered claims existing prior to the order of liquidation.... The obligation shall be satisfied by paying to the claimant ... (3) An amount not exceeding three hundred thousand dollars ($300,000) per claimant.... KRS 304.35–080(1)(a)(3).

> [KIGA] shall: (c) Be deemed the insurer to the extent of its obligation on the covered claims and to that extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent, .... KRS 304.36–080(1)(c).

Further, KRS 304.36–040, as amended, states: "This subtitle shall be construed to effect the purpose under KRS 304.36–020 which shall constitute an aid and guide to interpretation." By its own clear terms as amended, the entire statute applies to all open claims, that is, claims existing at the time of PIE's insolvency.

In *Peabody Coal Company v. Gossett*, Ky., 819 S.W.2d 33 (1991), this Court decided the issue of retroactive application of a statute in the absence of express legislative guidance. *Peabody* involved an injured worker awarded workers' compensation benefits in 1981. Prior to 1987, the workers' compensation statute allowed the reopening of an award only for a change of physical condition. The General Assembly amended and enlarged the statute in 1987 for a reopening on a change of occupational disability. Even though there was no change in the injured worker's underlying medical condition, he became unemployed in 1984 and was unsuccessful for two years in obtaining other employment as a coal miner. Because of these changed circumstances in employability, the injured worker moved to reopen his 1981 claim under the 1987 amendment.

The Workers' Compensation Board initially denied his motion to reopen, but a

successor board reversed and reopened the claim. The procedural history is succinctly stated in the *Peabody* opinion as follows:

> The employer appealed to the Court of Appeals which affirmed the New [sic] Board's reversal. The Court of Appeals noted that it was presented a single issue of first impression: "Did the 1987 amendment to KRS 342.125 eliminate the reopening requirement that the injured worker establish a worsening of physical condition as a prerequisite to showing an increase in occupational disability?" The court also noted that as a collateral issue, it must determine whether, if no worsening of physical condition must be shown, KRS 342.125, as amended, applies to compensation cases which arose prior to the amendment's effective date, October 26, 1987. The court then concluded in the affirmative as to both issues.

*Peabody, supra,* at 34.

In *Peabody,* the issue concerning retroactivity was premised on KRS 446.080(3), which provides that "no statute shall be construed to be retroactive, unless expressly so declared." However, this Court reasoned:

> A retrospective law, in a legal sense, is one which takes away or impairs vested rights acquired under existing laws, or which creates a new obligation and imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past. Therefore, despite the existence of some contrary authority, remedial statutes, or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of such rights, do not normally come within the legal conception of a retrospective law, or the general rule against the retrospective operation of statutes. In this connection it has been said that a remedial statute must be so construed as to make it effect the evident purpose

> for which it was enacted, so that if the reason of the statute extends to past transactions, as well as to those in the future, then it will be so applied although the statute does not in terms so direct, unless to do so would impair some vested right or violate some constitutional guaranty. 73 Am.Jur.2d *Statutes* § 354 (1974). (Footnotes omitted.)

> Although KRS 446.080(3) states that, "[n]o statute shall be construed to be retroactive, unless expressly so declared," it can be seen from the above commentary that since the 1987 amendment to KRS 342.125 is remedial, it does not come within the legal conception of a retrospective law nor the general rule against the retrospective operation of statutes. We believe our holding on this issue is consistent with the provision contained in KRS 446.080(1) that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature. . . ."

*Peabody, supra,* at 36.

The general rule is that a statute, even though it does not expressly state, has retroactive application provided the statute is remedial. This is a fundamental rule of statutory construction which does not invade the province of the legislature. Remedial means no more than the expansion of an existing remedy without affecting the substantive basis, prerequisites, or circumstances giving rise to the remedy.

*Black's Law Dictionary,* (6th ed.1990), defines remedial statute, and in the third paragraph provides a clear and unequivocal guideline for identifying remedial statutes:

> The underlying test to be applied in determining whether a statute is penal or remedial is whether it primarily seeks to impose an arbitrary, deterring punishment upon any who might commit a wrong against the public by a violation of the requirements of the statute, or

whether the purpose is to measure and define the damages which may accrue to an individual or class of individuals, as just and reasonable compensation for a possible loss having a causal connection with the breach of the legal obligation owing under the statute to such individual or class.

The *Black's Law Dictionary* definition is consonant with this Court's holding in *Peabody, supra.* This Court has described remedial statutes as those relating "to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of such rights." *Id.* at 36 (citing 73 Am.Jur.2d *Statutes* § 354 (1974)).

■■■■ A remedial statute is defined in the first full paragraph of 73 Am.Jur.2d *Statutes* § 11 (1974), titled "Statutes Regarded as Remedial," as follows:

Legislation which has been regarded as remedial in its nature includes statutes which abridge superfluities of former laws, remedying defects therein, or mischiefs thereof, whether the previous difficulties were statutory or a part of the common law. Remedial legislation implies an intention to reform or extend existing rights, and has for its purpose the promotion of justice and the advancement of public welfare and of important and beneficial public objects. The term applies to a statute giving a party a remedy where he had none, or a different one, before. Another common use of the term "remedial statute" is to distinguish it from a statute conferring a substantive right.

Both definitions of a remedial statute were approved by the Kentucky Court of Appeals in *Kentucky Insurance Guaranty Association v. Conco, Inc.,* Ky.App., 882 S.W.2d 129 (1994). In *Conco,* a worker was injured in October 1984, while employed by Conco, Inc. The company had workers' compensation insurance with a carrier later adjudged to be insolvent, with the result being that KIGA assumed coverage. At the time of the insolvency, KIGA's coverage was limited by statute to $50,000. In 1990, the statute was amended to remove the cap from KIGA's coverage of workers' compensation claims. Based on the holding in *Peabody, supra,* the Court of Appeals held that the amendment removing the cap was remedial legislation which had retroactive application. *Conco, supra,* at 130.

Further, the Court of Appeals in *Conco,* affirmed a basic concept of statutory interpretation as set out in KRS 446.080(1), that "all statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the Legislature." *Conco, supra,* at 130.

■■■■ When a plaintiff sues a defendant, the plaintiff has no vested right in the defendant being insured or in the amount of insurance coverage. The insurance coverage is merely a means of providing funds for the judgment. Likewise, when an insurance company becomes insolvent, KIGA provides funds to satisfy a judgment. Thus, the judicial determination of whether a statutory amendment should be applied retroactively involves a two-step inquiry: (1) Is the amendment limited to the furtherance, facilitation, improvement, etc ., of an existing remedy; and (2) If so, does it impair a vested right. If the statute in question only serves to facilitate the remedy, and if no vested right is impaired, the amendment in question is then properly applied to preexisting unresolved claims if such application is consistent with the evident purpose of the statutory scheme.

■■■■ The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. In *Cabell v. Markham,* 148 F.2d 737, 739 (2nd Cir. 1945), Judge Learned Hand commented:

Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of

any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.

When the Kentucky Legislature pronounced in KRS 446.080(3) that laws should not be applied retroactively, it is presumed to have done so with the knowledge that this would be interpreted to apply to laws of substance only, and not those dealing strictly with the extent of remedy. More specifically, when the 1998 General Assembly increased the limits of KIGA liability, it is presumed to have done so in light of *Peabody, supra,* and particularly, in full appreciation that the increase in liability limits would be applied to existing claims, just as an earlier identical amendment was so applied in *Conco, supra.*

Accordingly, given the intent of the legislature as manifested in the language of the KIGA Act itself, the policy underlying the statute, and past judicial interpretation of similar statutes, it is properly consistent to apply the statutory amendments to KRS 304.36–010 et. seq., to claims which existed at the time the legislature acted. This application should include the claims made by Appellees in this matter.

The KIGA Act does not create a vested right. It merely provides a remedy when there is a judgment. KIGA accords the necessary means to satisfy judgments in the event of insurance insolvency. Consequently, any amendments which provide an increase in the coverage for those judgments are remedial and applicable to pending cases.

■ According to 73 Am.Jur.2d *Statutes,* § 278 (1974), "It is a general rule of law that statutes which are remedial in nature are entitled to a liberal construction in favor of the remedy provided by law, or in favor of those entitled to the benefits of the statute." *Southerland Statutory Construction,* § 60.01 (5th ed.1992), lends further support for the liberal interpretation of remedial statutes. "Remedial statutes are liberally construed to suppress the evil and advance the remedy. The policy that a remedial statute should be liberally construed in order to effectuate the remedial purpose for which it was enacted is firmly established." *Id.*

Here, the evil which is to be suppressed is that some physicians, because of the financial insolvency of their chosen insurance company, will be unable to accord satisfaction to their injured patients. In addition, the injured patients have lost a definite source of funding for their judgments. KIGA is the remedy for such losses. Rather than make a fortress out of the dictionary, we should attempt to carry out the legislature's intended goal.

Accordingly, we affirm the judgment of the Jefferson Circuit Court, ruling that the amendments to the KIGA Act, KRS 304.36–010 et. seq., are remedial and have retroactive application.

LAMBERT, C.J., GRAVES, JOHNSTONE, STUMBO, and WINTERSHEIMER JJ. concur.

COOPER, J., dissents by separate opinion in which KELLER, J., joins.

KELLER, J., also dissents by separate opinion in which COOPER, J., joins.

COOPER, Justice, dissenting.

On December 10, 1997, the Superintendent of Insurance for the state of Ohio filed a Complaint for Rehabilitation in the Franklin County, Ohio, Court of Common Pleas against The P.I.E. Mutual Insurance Company. P.I.E. was placed into rehabilitation on December 15, 1997. A liquidation hearing was scheduled for February 17, 1998 and later rescheduled for March 23, 1998.

On January 26, 1998, House Bill 415 was introduced in the Kentucky House of Rep-

resentatives to amend KRS 304.36–080 and increase from $100,000.00 to $300,000.00 per claim the maximum liability of the Kentucky Insurance Guaranty Association (KIGA) for claims filed against insolvent insurers. House Bill 415 was passed by the House of Representatives on February 18, 1998 and by the Kentucky Senate on March 10, 1998.

On March 16, 1998, a resolution of the P.I.E. board of directors to not oppose liquidation was filed in the Franklin County, Ohio, case. The final order of liquidation of P.I.E. Mutual was entered on March 23, 1998.[1] At the time of its liquidation, P.I.E. Mutual was the largest medical malpractice insurer doing business in the Commonwealth of Kentucky. Thus, it is safe to assume that the General Assembly was aware of its pending liquidation and the potential effect of that liquidation on KIGA when it deliberated and enacted House Bill 415. Nevertheless, the General Assembly chose not to include in House Bill 415 either an emergency clause or any language declaring that the amendment of KRS 304.36–080 should be retroactively applied to claims accruing prior to its effective date. Since there was no emergency clause, the effective date of the amendment was July 15, 1998. Ky. Const. § 55.

Appellees all have medical malpractice claims against former insureds of P.I.E. Mutual which accrued prior to July 15, 1998. It is their fervent desire that the 1998 amendment of KRS 304.36–080 be declared retroactive so as to increase their respective potential recoveries against KIGA from $100,000.00 to $300,000.00. Presumably, this same plea was unsuccessfully lobbied in the General Assembly while that body was deliberating passage of House Bill 415. Nevertheless, the General Assembly determined that the amendment should not be given retroac-

tive effect. The majority of this Court now ignores that mandate and declares the amendment retroactive by judicial fiat.

### I. KRS 446.080(3).

The majority opinion repeats the error first committed in *Peabody Coal Co. v. Gossett*, Ky., 819 S.W.2d 33 (1991) of applying a common law rule of statutory construction to determine whether the General Assembly intended that a statute be given retroactive effect. In Kentucky, there is no need to resort to common law rules of construction, *e.g.*, whether a statute is substantive, remedial, procedural, or otherwise, for the General Assembly has told us in no uncertain terms when a statute is to be construed as retroactive.

> No statute shall be construed to be retroactive, unless expressly so declared.

KRS 446.080(3).

The statute does not say "[n]o statute, except those which are remedial or procedural, shall be construed to be retroactive...." It simply says "[n]o statute shall be construed to be retroactive...." As Justice Lukowsky plainly put it in *Hudson v. Commonwealth*, Ky., 597 S.W.2d 610 (1980):

> The legislature has proclaimed that it will expressly indicate those instances in which an act is retrospective in nature. It has not done so here.

*Id.* at 611.

In *Peabody Coal Co. v. Gossett, supra,* KRS 446.080(3) appeared to stand, as here, squarely in the way of the result the majority of the Court wished to reach in that case. Unable to find any Kentucky precedent to support the retroactive application of the statutory amendment at issue, the Court turned to 73 Am.Jur.2d *Statutes* § 354 (1974) to find a common law princi-

<hr>

1. The chronology of events pertaining to P.I.E.'s bankruptcy and the enactment of House Bill 415 was obtained from the Order of Liquidation entered in *Duryee v. The P.I.E. Mut. Ins. Co.*, No. 97CVH12–10867 (Franklin County, Ohio, Ct. of C.P., March 23, 1998), which is found in this record, the opinion rendered by the Ohio Court of Appeals in an appeal of that case, *Duryee v. The PIE (sic) Mut. Ins. Co.*, No. 98AP–535, 1998 WL 832180 (Ohio Ct.App. Dec. 1, 1998), and the 1998 Kentucky House and Senate Journals.

ple of statutory construction that statutes which are remedial in nature may be applied retrospectively because they do not create new obligations or impose new duties with respect to transactions already passed. Significantly, except for New York, none of the jurisdictions cited by Am.Jur.2d in support of that proposition have statutes even remotely similar to KRS 446.080(3). Although New York has a statute virtually identical to KRS 446.080(3), N.Y. [Statutes] Law § 52 (McKinney 1999), it also has another statute expressly declaring that remedial statutes are an exception to that rule. N.Y. [Statutes] Law § 54 (McKinney 1999). In Kentucky, there is no statute creating an exception to KRS 446.080(3).

KRS 446.080(3) was originally enacted in 1892 as KS § 459 [2] and was a codification of the common law maxim that "a statute shall have a prospective operation only, unless its terms show clearly a legislative intention that it shall operate retrospectively." *Watts v. Commonwealth*, 78 Ky. (1 Rodm.) 329, 331 (1880) (citing Cooley's Constitutional Limitations 370). From the date of its enactment in 1892 until this Court's 1991 decision in *Peabody Coal Co. v. Gossett, supra,* KRS 446.080(3) was consistently held to prohibit the retroactive application of any statute, whether substantive, remedial or procedural, unless specifically so declared in the statute. *See, e.g., Beacon Ins. Co. of America v. State Farm Mut. Ins. Co.,* Ky., 795 S.W.2d 62 (1990); *Purdy v. Palmore,* Ky., 789 S.W.2d 12 (1990); *Gould v. O'Bannon,* Ky., 770 S.W.2d 220 (1989); *University of Louisville v.. O'Bannon,* Ky., 770 S.W.2d 215 (1989); *Green River Dist. Health Dep't v. Wigginton,* Ky., 764 S.W.2d 475 (1989); *Policemen's & Firemen's Retirement Fund v. Rothrock,* Ky., 625 S.W.2d 577 (1981); *Hudson v. Commonwealth, supra; Roberts v. Hickman County Fiscal Court,* Ky., 481 S.W.2d 279 (1972); *Crawford v. V. & C. Coal Co.,* Ky., 432 S.W.2d 403 (1968); *Taylor v. Asher,* Ky., 317 S.W.2d 895 (1958); *Holliday v. Fields,* 210 Ky. 179, 275 S.W. 642 (1925); *Commonwealth v. Southern Pac. Co.,* 164 Ky. 818, 176 S.W. 375 (1915).

In *Purdy v. Palmore, supra,* decided only nineteen months before *Peabody Coal Co. v. Gossett,* the issue was whether a statutory amendment increasing the period of limitations within which to file a workers' compensation claim could be applied retroactively to an injury occurring prior to the amendment. The opinion in *Purdy* addressed both the definition of "retroactive" and the operation and effect of KRS 446.080(3).

Both Webster's Twentieth Century Unabridged Dictionary and Ballantine's Law Dictionary define "retroactive" essentially the same way, that is, "acting or designed to act in regards to things past ... having application to or effect on things prior to its enactment." It is apparent that the amendment to KRS 342.185 affected things prior to its enactment. In fact, appellees do not dispute this. Appellees attempt to get around it, as did the Court of Appeals, by saying it was procedural and not substantive. The General Assembly made no such distinction [in KRS 446.080(3) ]. It prohibited retroactive application of the statute unless the statute so declared. The amendment to KRS 342.185 did not so declare. . . .

789 S.W.2d at 14.

In *Beacon Ins. Co. of America v. State Farm Mut. Ins. Co., supra,* decided only fourteen months before *Peabody Coal,* this Court refused to give retroactive application to the enactment of KRS 304.39–045 (permitting a "named driver" exclusion in a policy of liability insurance), despite explicitly conceding in the opinion that the Motor Vehicle Reparations Act (KRS Chapter 304.39) is "remedial" legislation. 795 S.W.2d at 63 (citing *LaFrange v. United Servs. Auto. Ass'n,* Ky., 700 S.W.2d 411 (1985)). Thus, within two years before

---

**2.** 1892 Ky.Acts ch. 107 § 14.

its decision in *Peabody Coal,* this Court had held in two separate decisions that KRS 446.080(3) means what it says regardless of whether the newly enacted or amended statute is procedural (*Purdy, supra*) or remedial (*Beacon, supra*) in nature. Neither of those decisions were addressed or even acknowledged, much less overruled, in *Peabody Coal.*

The General Assembly is also well aware of the distinction between substantive legislation and that which is procedural or remedial, and clearly considers all three categories to be within the purview of KRS 446.080(3), *i.e.,* not retroactive unless expressly so declared. In enacting the 1996 amendments to the Workers' Compensation Act, the General Assembly specifically declared that substantive provisions were to be prospectively applied and that procedural provisions were to be retrospectively applied, and identified those provisions which were remedial and, thus, retroactive. KRS 342.0015 (1996 Ky.Acts (1st ex. sess.) ch. 1 § 82). Having recognized that distinction and made that declaration in legislation enacted less than fifteen months before enacting House Bill 415, the General Assembly presumably would have included similar language in House Bill 415 if it had intended any portion of that legislation to be retroactively applied. Our task is not to "do equity," but to ascertain and give effect to the intent of the legislature. The legislature gave us KRS 446.080(3) as the tool to be used in performing that task. It is simply disingenuous to suggest that the *absence* of an express declaration in House Bill 415 that it be construed as remedial and retroactive manifests a legislative intent that it be so construed. KRS 446.080(3) does not require that the legislature expressly declare when a statute is *not to be construed* as retroactive. It requires that this Court *not construe* a statute as retroactive unless the legislature expressly so declares.

## II. PEABODY COAL CO. v. GOSSETT.

The statutory amendment addressed in *Peabody Coal* was the 1987 amendment of KRS 342.125, the reopening provision of the Workers' Compensation Act. Prior to the amendment, a worker could reopen his claim only if he could prove a change of physical condition. The amendment permitted a reopening if the worker could prove a change of occupational disability, a much less stringent burden of proof. The worker's change of condition in *Peabody Coal* occurred *after* the effective date of the amendment; thus, the application of the amendment to the facts of that case could just as easily have been viewed as a prospective application. In fact, KRS 342.125(1) specifically provides that any modification of an award based on a change of conditions will be given only prospective effect. Recognizing that the law in effect on the date of injury controls a workers' compensation case, *Maggard v. International Harvester Co.,* Ky., 508 S.W.2d 777 (1974), the fact is that the decision in *Peabody Coal* did not affect any vested rights or obligations existing prior to the amendment. Specifically, *it did not increase the maximum award recoverable by the claimant in that case.*

*Peabody Coal* did not give, and we have never given, retroactive application to a statutory amendment which either increases or decreases the maximum limit of an award of compensation. *Beth–Elkhorn Corp. v. Thomas,* Ky., 404 S.W.2d 16 (1966), *overruled on other grounds, Inland Steel Co. v. Terry,* Ky., 464 S.W.2d 284 (1970), held that a post-injury amendment to KRS 342.316, which increased the maximum compensation allowable for disability due to occupational disease, could not be given retroactive application, because:

> An increase in the maximum award allowable is a change in the substantive liability as opposed to a change in remedial procedure.

*Id.* at 18. This "substantive" versus "remedial" argument was first raised and rejected in *Thomas v. Crummies Creek Coal Co.,* 297 Ky. 210, 179 S.W.2d 882 (1944).

It is argued by appellants that the amendment affects only the remedy, and not the substantial [sic] liability of the employer. But this argument is refuted by the very contention in support of which it is made, that contention being: that appellants are entitled to compensation by reason of the amendment, although it is admitted that, had the amendment not been enacted, they would not have been entitled thereto. The amendment, therefore, substantially extends the scope of the liability of the employer, and is not merely remedial in its nature.

*Id.,* 179 S.W.2d at 883–84; *see also, Leeco, Inc. v. Crabtree,* Ky., 966 S.W.2d 951 (1998); *General Elec. Co. v. Morris,* Ky., 670 S.W.2d 854 (1984); *Yocom v. Karst,* Ky., 528 S.W.2d 697 (1975); *Cantrell v. Stambaugh,* Ky., 420 S.W.2d 677 (1967); *Collier v. Hope Coal Co.,* Ky., 269 S.W.2d 278 (1954); *Old King Mining Co. v. Mullins,* Ky., 252 S.W.2d 871 (1952); *Knott Coal Corp. v. Kelly,* 313 Ky. 562, 232 S.W.2d 994 (1949); *Yocom v. Gantley,* Ky. App., 566 S.W.2d 176 (1978).

### III. THE KIGA ACT.

Like the Workers' Compensation Act, the Kentucky Insurance Guaranty Association Act, KRS 304.36–010, *et seq.,* is entirely a creature of statute. Its stated purpose with respect to the issue being addressed in this case, is "to minimize financial loss to claimants or policyholders because of the insolvency of an insurer, . . . and to provide a means of funding the cost of such protection among insurers." KRS 304.36–020. The Act establishes a limit of liability per claim and provides for an annual assessment up to a maximum amount per member to pay covered claims. KRS 304.36–080(1)(a), (d). As first enacted, KRS 304.36–080 limited KIGA's liability for any one claim to $50,-000.00, except that its liability for a workers' compensation claim was unlimited. The maximum annual assessment to fund the payment of covered claims was 1% of each member's net direct written premiums for the calendar year immediately preceding the assessment, subject to the requirement that the member be notified of the amount of the assessment not later than thirty days before its due date. 1972 Ky.Acts ch. 137 § 8.

KRS 304.36–080 was amended in 1984 to delete the workers' compensation exception to the $50,000.00 limit. 1984 Ky.Acts ch. 322 § 15. In 1986, the statute was amended to increase the limit of liability from $50,000.00 to $100,000.00. 1986 Ky. Acts ch. 437 § 24. The statute was amended again in 1990 to reinstate the workers' compensation exception. 1990 Ky.Acts ch. 268 § 1. It was in the context of this legislative history that the Court of Appeals addressed two cases arising out of the 1985 bankruptcy of Ideal Mutual Insurance Company.

In *Collins v. Cumberland Gap Provision Co., Inc.,* Ky.App., 754 S.W.2d 864 (1988), the issue was whether KIGA was liable for payment of the full workers' compensation award for an injury which occurred in 1983, when the workers' compensation exception to the liability limit was still in the statute; or whether it was liable only for the $50,000.00 limit because Ideal Mutual's bankruptcy occurred in 1985 after the exception was deleted from the statute. Following a lengthy analysis of the applicable statutory provisions, Judge Wilhoit, writing for a unanimous panel which included Chief Judge Howerton and Judge McDonald, concluded:

Under the statutes, therefore, the KIGA is obligated to pay only "covered claims;" a "covered claim" is an unpaid claim against an "insolvent insurer;" and an "insolvent insurer" is one which has been so found by a competent court of its domicile which has also ordered liquidation. The KIGA's liability to pay does not attach until an insurer is found to be insolvent by the appropriate court. In this case, that was in February 1985. At that time, the version of KRS 304.36–080 in effect did not exclude workers'

compensation claims from the $50,000.00 limit to KIGA's obligation. Thus, we conclude that the KIGA's obligation to pay Mr. Collins is limited to $50,000.00. 754 S.W.2d at 866.

In *Kentucky Ins. Guar. Ass'n v. Conco, Inc.*, Ky.App., 882 S.W.2d 129 (1994), the work-related injury occurred in October 1984 after deletion of the workers' compensation exception from the statute. Thus, both the injury and Ideal Mutual's bankruptcy occurred during the period in which KIGA's liability for payment of a workers' compensation claim was limited to $50,000.00. Under the reasoning of *Collins v. Cumberland Gap Provision Co., Inc., supra,* the $50,000.00 liability limit clearly applied. However, by the time KIGA's payments reached the $50,000.00 limit, the 1990 amendment restoring the workers' compensation exception had gone into effect. Thus, the issue was whether the 1990 amendment should be given retroactive effect despite the clear mandate of KRS 446.080(3) to the contrary.

°In *Conco,* a different Court of Appeals panel seized upon the holding in *Peabody Coal Co. v. Gossett* and held that the 1990 amendment was "remedial," thus could be retroactively applied to increase KIGA's maximum liability from $50,000.00 to an unlimited sum. As noted *supra, Peabody Coal* did not give retroactive effect to a statutory amendment increasing the maximum amount of compensation payable for a pre-existing claim; and we have always held that statutory amendments of that type are substantive, not remedial. *Beth–Elkhorn Corp. v. Thomas, supra; Thomas v. Crummies Creek Coal Co., supra.* Thus, *Conco* clearly misapplied *Peabody Coal* and erroneously ignored all of our applicable precedents on this issue. Now, the majority of this Court cites *Conco* as authority for holding that the 1998 amendment of KRS 304.36–080, which increased KIGA's liability limit from $100,000.00 to $300,000.00, is "remedial," thus can be retroactively applied to a pre-existing claim— a clear case of the tail wagging the dog.

## IV. THE 1998 AMENDMENTS.

As in *Beth–Elkhorn Corp. v. Thomas* and *Thomas v. Crummies Creek Coal Co.,* both *supra,* retroactive application of the 1998 amendment of KRS 304.36–080 alters the pre-existing rights and obligations of these parties, thus the amendment is substantive and not remedial. Specifically, retroactive application of the amendment will triple KIGA's potential liability with respect to each pre-existing claim from $100,000.00 to $300,000.00. The same amendment which tripled KIGA's liability exposure also doubled the maximum assessment levied to fund the payment of covered claims from 1% to 2% of net direct written premiums. 1998 Ky.Acts ch. 99 § 5. The purpose of the increased assessment obviously was to fund the increased liability. But since each member is entitled to thirty days notice prior to assessment, the increased assessment by its very terms cannot be retroactively applied. Undoubtedly, that is why the General Assembly chose not to give retroactive effect to the increase in liability—the increased assessments needed to fund the increased liability are simply not there to pay a retroactive increase in liability. .

In *Conco, supra,* the Court of Appeals placed great significance on the fact that KRS 304.36–040 required the KIGA Act to be "liberally construed." Thus, it is not insignificant that the same legislation which increased the limit of KIGA's liability also deleted the word "liberally" from that statute. 1998 Ky.Acts ch. 99 § 3.

## V. CONCLUSION.

The result reached by the majority in this case is directly contrary to the unambiguous mandate of KRS 446.080(3) and all of our existing precedents with respect to the issue addressed in this case. Our decision in *Peabody Coal Co. v. Gossett,* though incorrect in my view, would not support the result reached by the majority in this case even if it were correct. Accordingly, I would reverse the judgment of

the Jefferson Circuit Court and overrule *Kentucky Ins. Guar. Ass'n v. Conco, Inc., supra.*

KELLER, J., joins this dissenting opinion.

KELLER, Justice, dissenting.

I concur with Justice Cooper's opinion that this Court need not apply common law rules of statutory construction to ascertain the General Assembly's intent because the Legislature, in KRS 446.080(3), has instructed this Court not to construe a statute retroactively unless the General Assembly expressly declares that we should do so. I dissent separately, however, to express my view that a retrospective application of the 1998 amendment of KRS 304.36–080 increasing from $100,000.00 to $300,000.00 the maximum potential liability of the Kentucky Insurance Guaranty Association (KIGA) would affect vested rights. Therefore, I disagree with the majority opinion's attempt to characterize the 1998 amendment to KRS 304.36–080 as remedial under this Court's holding in *Peabody Coal v. Gossett.*[1] I further believe that this Court should overrule *Kentucky Insurance Guaranty Association v. Conco*[2] to the extent that it holds otherwise.

In *Nutt v. Champion International Corporation,*[3] the Supreme Court of Tennessee. addressed whether legislative amendments to Tennessee's Workers' Compensation statutes which permitted offsets against workers' compensation benefits for payments made to the employee under an employer-funded disability plan should be applied retrospectively in the face of a presumption that statutes operate prospectively unless the legislature clearly indicates otherwise. The Court concluded that the amendment was not retroactive and explained the types of statutory changes which may be referred to as procedural or remedial:

Generally, the statute in effect at the date of the worker's injury governs the rights of the parties under worker's compensation law absent an indication of the legislature's contrary intent. An exception to the prospective-only application exists for statutes which are remedial or procedural in nature. Statutes deemed remedial or procedural apply retrospectively to causes of action arising before such acts become law and to suits pending when the legislation took effect.

A procedural or remedial statute is one that does not affect the vested rights or liabilities of the parties. A procedural statute is one that addresses the mode or proceeding by which a legal right is enforced. Remedial statutes are defined as "[l]egislation providing means or method whereby causes of action may be effectuated, wrongs redressed and relief obtained...." "*Statutes that create a new right of recovery or change the amount of damages recoverable are, however, deemed to have altered the parties vested right and thus are not considered remedial.*"[4]

Although merely persuasive authority, the depth of analysis in *Nutt* stands in sharp contrast to that in the three cases in which Kentucky courts have deemed remedial a legislative act or amendment which altered the amount of money to be received by a party, *Kentucky Ins. Guar. Ass'n v. Conco,*[5] *Napier v. Scotia Coal Co.,*[6] and *Thornsbury v. Aero Energy.*[7] In none of these cases did the courts' opinions indicate they gave any serious consideration to the vested rights of the parties.

1. Ky., 819 S.W.2d 33 (1991).

2. Ky.App., 882 S.W.2d 129 (1994).

3. 980 S.W.2d 365 (Tenn.1998).

4. *Id* at 368 (internal citations deleted and emphasis added).

5. *Supra* note 2.

6. Ky., 874 S.W.2d 377 (1994).

7. Ky., 908 S.W.2d 109 (1995).

Today's majority repeats that error in the one paragraph it devotes to the question of whether the KIGA Act creates a vested right:

> The KIGA Act does not create a vested right. It merely provides a remedy when there is a judgment. KIGA accords the necessary means to satisfy judgments in the event of insurance insolvency. Consequently, any amendments which provide an increase in the coverage for those judgments are remedial and applicable to pending cases.[8]

After defining the purpose behind KIGA's enactment as "provid[ing] a remedy when there is a judgment," the majority appears to have ended its examination of the KIGA Act and reached the preordained conclusion that the Act was remedial. I believe a closer analysis of the KIGA Act demonstrates that a retrospective application of the $300,000 upper limit on recoveries impairs vested rights.

> Vested rights are understood to be:

> [R]ights which have been so completely and definitely accrued to or settled in a person that they are not subject to be defeated or canceled by the act of any other private person.... Immediate or fixed right to present or future enjoyment and one that does not depend on an event that is uncertain. A right complete and consummated, and of such character that it cannot be divested without the consent of the person to whom it belongs, and fixed or established, and no longer open to controversy.[9]

I believe the majority opinion has overlooked the implications of KIGA's duty to pay covered claims defined by KRS 304.36–808(1)(a):

> (1) The association shall:

>> (a) Be *obligated* to the extent of the covered claims existing prior to the order of liquidation and arising within thirty (30) days of liquidation, or before the policy expiration date if less than thirty (30) days after the order of liquidation, or before the insured replaces the policy or on request effects cancellation, if he does so within thirty (30) days of the order of liquidation. The *obligation shall be satisfied by paying to the claimant an amount as follows:*

>> 1. The full amount of a covered claim for benefits arising from a workers' compensation insurance policy purchased to satisfy the requirements of KRS 342.340;

>> 2. An amount not exceeding then thousand dollars ($10,000) per policy for a covered claim for the return of unearned premium; or

>> 3. *An amount not exceeding three hundred thousand dollars ($300,000)* [previous to this amendment, one hundred dred thousand dollars ($100,000) ] *per claimant for all other covered claims.*[10]

Thus, once PIE Mutual Insurance Company (PIE) was declared insolvent, KIGA was deemed to be the insurer to the extent of obligations on the covered claims, and possessed all rights, duties and obligations of PIE as if PIE had not become insolvent.[11] Under the terms of a typical insurance contract, an insured has vested contractual rights to payment under the policy. On the other hand, the policy limit of the insurance contract confers a vested right upon the insurer by establishing the maximum amount it will have to pay by virtue of the policy limits. Similarly, KIGA's right to claim limitations on its liability established by the KIGA statute is an immediate or fixed right to future enjoyment which does not depend on an "uncertain" event, and vests at the time a

---

8. Majority Opinion at 611.

9. *Black's Law Dictionary,* Sixth Edition (West Publishing Co.1990).

10. KRS 304.36–808(1)(a) (emphasis added).

11. KRS 304.36–080(1)(c).

covered claim [12] arises. As such, even under the authority relied upon by the majority opinion, *Peabody Coal v. Gossett,*[13] retrospective application is improper.

For the reasons outlined above, I would reverse the judgment of the Jefferson Circuit Court.

COOPER, J., joins this dissent.